**In re Steven Paul HIRSCH, Cheryl Kane.**

**CITICORP MORTGAGE, INC., Appellant,**

v.

**Steven Paul HIRSCH, Appellee,**

**CITICORP MORTGAGE, INC., Appellant,**

v.

**Cheryl KANE, Appellee.**

Civ. A. No. 93–4861.

United States District Court, E.D. Pennsylvania.

March 30, 1994.

David C. Pollack, Stroock & Stroock & Lavan, Miami, FL, for Citicorp Mortg., Inc.

William D. Schroeder, Jr., Brown & Goldman, P.C., Lansdale–Colmar, PA, for Steven Paul Hirsch.

Walter A. Steinbacher, Philadelphia, PA, for Cheryl Kane.

## MEMORANDUM

DALZELL, District Judge.

This is a consolidated appeal from the Orders of the Bankruptcy Court for the Eastern District of Pennsylvania allowing appellees Steven Hirsch and Cheryl Kane to bifurcate appellant Citicorp Mortgage, Inc.'s claims against them into secured and unsecured amounts under Chapter 13 plans and confirming their Chapter 13 plans of reorganization. For the following reasons, we will vacate the Bankruptcy Court's Orders and remand the cases for further proceedings consistent with this opinion.

### I. *Factual Background*

These appeals involve a practice known to bankruptcy cognoscenti as "lien-stripping." This term refers to the splitting of a secured lender's lien into secured and unsecured components. The secured part equals the fair market value of the underlying real property at the time of the splitting, and the debtor in such lien-stripped plans pays this amount to the lender in monthly installments, typically over five years. The unsecured part constitutes the remainder that the debtor owes the lender, and this portion is lumped with the rest of the debtor's unsecured obligations. The lender seldom receives a cent from this unsecured part.

As will be seen, both appeals involve the precise situation just described.

In Re: Hirsch

Hirsch and his non-debtor wife purchased a home and financed the purchase with a $92,000 loan from Citicorp. On September 29, 1989, Mr. and Mrs. Hirsch executed a note in the amount of $92,000, as well as a mortgage secured by the house,

> [t]ogether with all the improvements now or hereafter erected on the property, and

all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.

Hirsch Record on Appeal, Document 8.[1]

Hirsch defaulted on the loan. On April 3, 1992, the Court of Common Pleas of Philadelphia County entered a foreclosure judgment in favor of Citicorp in the amount of $122,-898.39.[2] On March 9, 1993, Hirsch filed a petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.* Hirsch's Chapter 13 plan, filed the same day, proposed that he pay $2,300 per month for 60 months, enough to pay off the fair market value of the house, but not enough to pay off the full amount of the foreclosure judgment. The parties stipulated that the fair market value of the house was $88,000. Hirsch brought an adversary proceeding to avoid Citicorp's lien to the extent that it exceeded the fair market value of the home pursuant to 11 U.S.C. § 506(a) and (d).

On June 25, 1993, the Bankruptcy Judge entered judgment in favor of Hirsch and ordered that Citicorp's claim be bifurcated into an $88,000 secured claim and a $34,-898.39 unsecured claim. Citicorp filed a motion for reconsideration, and on July 30, 1993, the Bankruptcy Court denied the motion. On August 6, 1993, the Bankruptcy Court entered an Order confirming Hirsch's plan. On August 9, 1993, Citicorp filed a Notice of Appeal from the Hirsch reconsideration Order and, on August 16, 1993, filed one from the Hirsch confirmation Order.

**In Re: Kane**

Kane bought a house and financed her purchase with a $26,400 loan from Citicorp. On April 22, 1985, Kane executed a note to Citicorp for $26,400, and a mortgage covering the house,

[t]ogether with all and singular the Buildings and Improvements on said premises,

as well as all alterations, additions or improvements now or hereafter made to said premises, and any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises, Streets, Alleys, Passages, Ways, Waters, Water Courses, Rights, Liberties, Privileges, Hereditaments and Appurtenances whatsoever thereunto belonging or in any wise appertaining and the Reversions and Remainders, Rents, Issues and Profits thereof.

Kane Record on Appeal, Document 5.

Kane defaulted on the mortgage, and Citicorp sued to foreclose. On August 8, 1989, Citicorp obtained a foreclosure judgment in its favor for $61,731.27. On April 1, 1993, Kane filed a Chapter 13 bankruptcy petition, and simultaneously submitted a plan to pay the alleged fair market value of the house over five years. The parties stipulated that the fair market value of Kane's house was $30,000.

Like Hirsch, Kane commenced an adversary proceeding to avoid Citicorp's lien to the extent that it exceeded the fair market value of her home, pursuant to 11 U.S.C. § 506(a). On July 15, 1993, the Bankruptcy Court issued an Order bifurcating Citicorp's claim into a $30,000 secured claim and a $34,569.25 unsecured claim. Citicorp moved for reconsideration, and on August 20, 1993 the Bankruptcy Court denied Citicorp's motion. On August 24, 1993, the Bankruptcy Court entered an Order confirming Kane's plan of reorganization, and three days later Citicorp filed a Notice of Appeal from the Kane reconsideration Order and the Kane confirmation Order.

We consolidated the two Hirsch appeals on September 23, 1993. On October 22, 1993 Judge Weiner issued an Order consolidating the Kane appeal with the Hirsch appeals, and both were assigned to us for disposition.

---

1. Appellee has not disputed Citicorp's statement that this is a "uniform mortgage instrument used through the industry for single family mortgages sold into the secondary market." Appellant's Initial Brief at 5, note 1.

2. The amount due was originally found to be $107,779.03, but was later reassessed to $122,-898.39.

We heard oral argument on March 14, 1994, and ordered Citicorp to make supplemental submissions from the *Nobelman* record in the Supreme Court, described below.[3]

## II. *Jurisdiction*

The parties do not dispute that the Hirsch reconsideration Order of August 6, 1993 and the confirmation Order of August 16, 1993 and the Kane reconsideration Order of August 20, 1993 and the confirmation Order of August 24, 1993 are final Orders. It is also undisputed that Citicorp filed timely notices of appeal. Pursuant to 28 U.S.C. § 158(a), which grants district courts jurisdiction to hear appeals from final orders of the Bankruptcy Court, we have jurisdiction over these appeals. *See, In re Jean R. DeSeno*, 17 F.3d 642 (3d Cir.1994).

## III. *Discussion*

### A. *Standard of Review on Appeal*

■ A District Court's scope of review on such appeals is well-settled. A Bankruptcy Court's findings of fact may only be set aside if they are clearly erroneous. *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 922 (3d Cir.1992); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989). A Bankruptcy Judge's legal conclusions are subject to a plenary and *de novo* review by a District Court on appeal. *Id.* Because both Hirsch and Kane submitted their case on a stipulated record of facts, we need only review the

Bankruptcy Judge's legal analysis and conclusions.

### B. *Modification of a Claim Secured by a Residential Mortgage*

■ The crux of this dispute revolves around the interplay between sections 11 U.S.C. 506(a)[4] and 11 U.S.C. 1322(b)(2)[5] of the Bankruptcy Code. Section 506(a) allows the bifurcation of a claim into a partially secured claim and a partially unsecured claim when the lender's secured claim exceeds the value of the collateral. Section 1322(b)(2) provides, however, that a Chapter 13 debtor's plan may not modify the rights of a mortgage lender whose claim is "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

Prior to the Supreme Court's recent decision in *Nobelman v. American Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), there had been a split among the Circuits on the propriety of allowing a bifurcation of home mortgage debt pursuant to § 506(a) in a Chapter 13 plan in the face of § 1322(b)(2). *Nobelman*, —— U.S. at ——, 113 S.Ct. at 2109. In *Nobelman*, the mortgagee, American Savings Bank, had a claim on the Nobelmans' condominium, and the Nobelmans' deed of trust to the Bank provided for an additional security interest in .67 percent interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance,

---

**3.** After consolidation of these appeals and prior to oral argument, we learned that one of Kane's lawyers had been suspended from practice and that the other attorney who had been working on Kane's case had died. Our efforts to locate a lawyer for Kane were unavailing, and thus, at the oral argument, Kane was not represented. Citicorp's attorney, however, gave us Kane's brief which her attorney, Mr. Steinbacher, had written before his death, but which we had not received. Kane was thus at least able to present her views to us in writing.

**4.** 11 U.S.C. § 506(a) in relevant part provides:
**Determination of secured status**
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in

the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

**5.** 11 U.S.C. § 1322(b)(2) provides in relevant part:

**Contents of plan**
... (b) Subject to subsections (a) and (c) of this section, the plan may—
... (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...
[Emphasis added].

[t]ogether with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, ... royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust.

Nobelman Deed of Trust, p. 1, attached to the Brief of Molly W. Bartholow, Standing Chapter 13 Trustee, in *Nobelman v. American Savings Bank,* U.S.Sup.Ct. No. 92–641. The bankruptcy court denied the confirmation of the Chapter 13 plan of reorganization that bifurcated American Savings Bank's mortgage claim on the Nobelmans' residence into a secured and unsecured claim on the ground that it was a violation of 11 U.S.C. § 1322(b)(2). The District Court and the Court of Appeals for the Fifth Circuit each affirmed that decision. *In re Nobleman,* 129 B.R. 98 (N.D.Tex.1991) and 968 F.2d 483 (5th Cir.1992).

The Supreme Court also affirmed, and in so doing construed the language of § 1322(b)(2) to mean that the words "claim secured by" referred to "the lienholder's entire claim, including both the secured and unsecured components of the claim." *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2111. Because of its importance to our resolution of these appeals, we will rehearse *Nobelman's* analysis in some detail.

The petitioners in *Nobelman* had argued that lenders in an under-secured home mortgage case could only be regarded as holding a "secured claim" within the meaning of § 1332(b)(2) to the extent of "the value of the collateral property." *Id.* at ——, 113 S.Ct. at 2109. Because the Chapter 13 plan proposed to make payments equal to "the value of the collateral property", the petitioners argued that "the plan effects no alteration of the bank's rights as the holder of that claim." *Id.* The Supreme Court unanimously reject-

ed that argument because, in the words of Justice Thomas's Opinion for the Court, the

> interpretation fails to take adequate account of § 1322(b)(2)'s focus on "rights." That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modification of the *"rights of holders"* of such claims.

*Id.* at —— – ——, 113 S.Ct. at 2109–2110 (emphasis in original). Such "rights", the Supreme Court noted, "are reflected in the relevant mortgage instruments." *Id.* at ——, 113 S.Ct. at 2110. Thus, these rights, " 'bargained for by the mortgagor and the mortgagee' ... are [the] rights protected from modification by § 1322(b)(2)." *Id.,* quoting *Dewsnup v. Timm,* 502 U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992).

In setting its face against the lien-stripping in *Nobelman,* the Supreme Court also found illegitimate the kind of clause-stripping that the Bankruptcy Court performed on the mortgages here. A careful analysis of *Nobelman* against its record in the Supreme Court confirms this conclusion.

At the oral argument in *Nobelman,* the stress on the artificiality of parsing rights contained in the mortgage language becomes clear in the extended colloquy beginning at page 16. There, a Justice pressed the petitioners' counsel by asking, "how you can allow a unitary instrument which covers a claim—part of which is secured and part of which is unsecured, but it's just one instrument." *See Leonard Nobelman et ux. v. American Savings Bank,* No. 92–641, Official Transcript of April 19, 1993 oral argument at 16–22.[6] Petitioners' counsel was unable to give the questioning Justice "an example of how one can modify the rights pertaining to this unitary instrument only as to the unsecured portion, but not as to the secured portion." *Id.* at 17. This energetic colloquy became the square holding of the Court:

> Petitioners propose to reduce the outstanding mortgage principal to the fair

---

6. For the convenience of readers of this opinion, we have made the *Nobelman* record part of the record on these appeals.

market value of the collateral, and, at the same time, they insist that they can do so without modifying the bank's rights "as to interest rates, payment amounts, and [other] contract terms." Brief for Petitioners 7. That appears to be impossible. The bank's contractual rights are contained *in a unitary note* that applies at once to the bank's overall claim, including both ·the secured and unsecured components.

*Id.* —— U.S. at ——, 113 S.Ct. at 2111 (emphasis added).

The Court thus found that bifurcating a claim into a secured claim and unsecured claim would modify the claimholder's "unitary" rights that applied to both the secured and unsecured components, in violation of § 1322(b)(2). *Id.*

*Nobelman* overruled at least part of *Wilson v. Commonwealth Mortg. Corp.*, 895 F.2d 123 (3d Cir.1990), and (inferentially) *Sapos v. Provident Institution of Savings*, 967 F.2d 918 (3d Cir.1992), which had been the leading Third Circuit cases in this area. In those decisions, our Court of Appeals had found that a Chapter 13 debtor could use § 506(a) to strip a mortgagee's lien to the fair market value of the mortgaged premises. *Nobelman* unquestionably overruled the Court of Appeals' first basis for its holding that as a matter of statutory analysis a claim could be bifurcated into a secured claim and an unsecured claim, and thus the unsecured claim could be modified without offending § 1322(b)(2). *Nobelman* did not, however, explicitly address the Court of Appeals' second basis for its *Wilson* holding that § 1322(b)(2) is inapplicable to mortgages that are secured by a security interests in property *in addition to* the real property of "the

debtor's principal residence" itself. *See* 895 F.2d at 128–129.[7]

When considering whether Hirsch and Kane could bifurcate Citicorp's claims, the Bankruptcy Judge based his analysis on the second basis of *Wilson* and *Sapos*, and found that because the Hirsch and Kane mortgages by their terms took security interests beyond the homestead, they were not secured exclusively by real property, and thus fell outside the scope of § 1322(b)(2).[8] *Hirsch v. Citicorp Mortgage Corp.*, 155 B.R. 688, 690–691 (Bankr.E.D.Pa.1993); Kane Record on Appeal, Document 7. Citicorp takes issue with this holding, arguing that because the security interest in Hirsch and Kane was the same or similar to that of the mortgagors in *Nobelman*, bifurcation necessarily violates the anti-modification provision of § 1322(b)(2) as *Nobelman* construed it.[9]

Hirsch and Kane, agreeing with the Bankruptcy Court, argue that their mortgages are secured by interests other than the real property, and thus fall outside the ambit of § 1322(b)(2). They argue that the Supreme Court in *Nobelman* did not address the issue of whether additional security interests remove a mortgage from the scope of § 1322(b)(2) or whether the deed of trust granted security interests in addition to the real property.

Although the Supreme Court in *Nobelman* did not analyse the general issue of when a claim is considered to be secured "only by an interest in real property", we find that *Nobelman* necessarily resolved the issue of whether the Nobelmans' deed of trust fell within the purview of § 1322(b)(2). In order for the Supreme Court to reach the issue of whether bifurcation of the claim violated

---

7. As will be seen below, however, we doubt the continuing vitality of this second basis after *Nobelman.*

8. Citing *In re Oglesby*, 150 B.R. 620 (Bankr. E.D.Pa.1993), *In re Taras*, 136 B.R. 941 (Bankr. E.D.Pa.1992), *In re Klein*, 106 B.R. 396 (Bankr. E.D.Pa.1989) and *In re Caster*, 77 B.R. 8 (Bankr. E.D.Pa.1987), the Bankruptcy Judge held that the security interest in "rents", "profits", "fixtures", and "replacements and additions" to the home did not constitute a claim secured only by real property, and thus did not fall within the anti-modification provision of § 1322(b)(2).

*Hirsch v. Citicorp Mortgage Corp.*, 155 B.R. 688, 690–691, (Bankr.E.D.Pa.1993).

9. Citicorp argues in the alternative that a modification would violate § 1322(b)(2) because it obtained a mortgage foreclosure judgment in its favor, and thus any security provisions additional to the real estate merge into the foreclosure judgment. *In re Stendardo*, 991 F.2d 1089 (3d Cir.1993). Because we find that the Hirsch and Kane mortgages fell within the scope of § 1322(b)(2), we need not reach this alternative argument, persuasive as we believe it is.

§ 1322(b)(2), it first needed to determine that the deed of trust was subject to the provisions of § 1322(b)(2). Indeed, the District Court in *Nobelman* specifically considered the argument that because the deed of trust provided for "a security interest in an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents, *in addition to the residence itself*" § 1322(b)(2) should be inapplicable, and found that contention "to be without merit." *In re Nobelman*, 129 B.R. 98, 104 (N.D.Tex.1991) (emphasis added).

■ We have examined all the language in the Nobelmans' deed of trust (which was submitted to us after oral argument) and compared it to the words of the Hirsch mortgage. Because the language is in all material respects identical, we disagree with the Bankruptcy Judge's conclusion and find that the Hirsch mortgage, like the Nobelmans' deed of trust, falls within the scope of § 1322(b)(2). Indeed, at the oral argument, appellee Hirsch conceded that if the Nobelmans' deed of trust contained the same language as the Hirsch mortgage, then Citicorp's claim could not be bifurcated. Hirsch Oral Argument Transcript at 29–30. We thus hold that the bifurcation of Citicorp's claim against Hirsch would violate § 1322(b)(2).

■ The language of the Kane mortgage, however, markedly differs from that of the Hirsch mortgage.[10] Although the Kane mortgage does contain terms which suggests that there might be security interests in items other than the real property, *e.g.*, "appliances, machinery, furniture and equipment (whether fixtures or not)", Kane Record on Appeal, Document 5, there is nothing in the record to suggest that this was not a garden-variety *Nobelman* home mortgage case, or that Citicorp actually received a security interest in anything other than Ms. Kane's real property in Philadelphia.

We mention this latter point because there could, in our view, be cases where a creditor who actually takes an additional security interest in personalty would not be afforded the protections of § 1322(b)(2), even after *Nobelman*. Assume, for example, that Kane was Charles Foster Kane of *Citizen Kane*. Citicorp's mortgage gave it not only a security interest in Xanadu, but also in the vast abundance of "furniture and equipment (whether fixtures or not)". Citicorp exercised its rights as to Xanadu as well as to all of Kane's griffins, gargoyles and goblets. *Nobelman* would seem to us not to afford Citicorp § 1332(b)(2) protection for this wealth of personalty in addition to the real property of Xanadu. The legislative history of § 1322(b)(2) records that Congress wished to give extra protection to home mortgage lenders in order to encourage such common financings, *Grubbs v. Houston First American Sav. Asso.*, 730 F.2d 236, 246 (5th Cir. 1984), and adding Citizen Kane's horde to Xanadu would give his lender more than Congress believed necessary.

Returning to Ms. Kane's house on Luzerne Street in Philadelphia, it is quite clear that it contained *no* such ancillary personalty as in our Xanadu hypothetical. To the contrary, as the Bankruptcy Judge noted in footnote 2 of his July 15, 1993 Order:

> The parties' stipulation in open court recited that the market value of the Home is $30,000. The stipulation does not address the value of the personalty also secured by the Mortgage, *e.g.*, *inter alia*, appliances, machinery, furniture, equipment, rents, issues, and profits.
>
> Since both counsel expressed familiarity with the *Hammond* decision, we assume that their stipulation represents an agreement that we should not attribute any value to the non-realty items as property separate and apart from the mortgaged premises itself. . . .

Thus, the record in this matter is devoid of any suggestion that Citicorp in fact took any security interest in addition to Cheryl Kane's real property. This reality also distinguishes her case from *Wilson*, which found "indepen-

---

**10.** At oral argument Citicorp listed two possible reasons for why the language in the two mortgages differs: (1) the Hirsch and Kane mortgages were issued through different "quasi-governmental corporations" which have separate form mortgages and (2) the Kane mortgage is an older form. Oral Argument Transcript at 9.

dent value" in such items. *Wilson*, 895 F.2d at 129. In any event, it would seem to us that *Wilson*'s alternative holding is hard to reconcile with the mortgage not stripped in *Nobelman*, which covered "mineral, oil and gas rights and profits" in the context of a residential secured lending document. Thus, we hold that the bifurcation of Kane's mortgage also contravened § 1322(b)(2).

We are aware that our holding diverges from that of our colleagues in *Hutchins v. Commonwealth Mortgage*, 165 B.R. 401 (E.D.Pa.1994), *In re Laws*, 163 B.R. 449 (E.D.Pa.1994) and *In re Hammond*, 156 B.R. 943, 945 (E.D.Pa.1993), three cases decided after *Nobelman*. All held that bifurcation was not a violation of § 1322(b)(2) where the mortgage was secured by interests in addition to the real property. In *Laws*, Judge Buckwalter found that the mortgagee "took a security interest in the debtor's other property in addition to the debtor's residence." *Laws*, 163 B.R. at 451. We have found no evidence of Citicorp in fact taking such additional security interests in property of Hirsch or Kane. In *Hammond* and *Hutchins*, it appears that Judges Reed and James McGirr Kelly looked only to the language on the face of the subject mortgages to determine that there was a security interest in addition to the real property. In none of these cases, however, do our colleagues seem to have been provided with the actual language of the Nobelmans' deed of trust which on its face covered rights far removed from the world of residential lending (*e.g.*, "mineral, oil and gas rights").

## IV. *CONCLUSION*

We do not find it possible to construe mortgage terms in all material respects the same as the Nobelmans' and come to a conclusion directly at odds with what the Supreme Court did in their case in 1993. On the record before us in Kane, we are constrained to come to the same conclusion despite the expansive language of her mortgage. We therefore find that the Bankruptcy Court erred and that, on these records, bifurcation of Citicorp's claims on the Hirsch and Kane mortgages into secured and unsecured claims violated § 1322(b)(2) as *Nobelman* construed it.

An appropriate Order follows.

### *ORDER*

AND NOW, this 30th day of March, 1994, upon consideration of appellant Citicorp's briefs, appellee Hirsch's brief, appellee Kane's brief, and after oral argument and review of supplemental submissions, it is hereby ORDERED that:

1. The Bankruptcy Court's Orders of July 30, 1993, and August 6, 1993 in *In re Hirsch*, Case No. 93–11372S and Adversary No. 93–0210S, are VACATED;

2. The Bankruptcy Court's Orders of August 20, 1993, and August 24, 1993 in *In re Kane*, Case No. 93–11897S and Adversary No. 93–0427S, are VACATED;

3. Judgment is entered in favor of appellant Citicorp Mortgage, Inc. and against appellees Steven Paul Hirsch and Cheryl Kane; and

4. These two cases are REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion and for the development of new Chapter 13 plans of reorganization.