**In re Raymond J. PINTO, Debtor.**

**Bankruptcy No. 95–33204.**

United States Bankruptcy Court,
D.New Jersey.

Jan. 30, 1996.

Andrew J. Kelly, Broege, Neumann & Fischer, Manasquan, New Jersey, for Raymond J. Pinto.

Ralph F. Casale, Epstein, Epstein, Brown & Bosek, P.C., Chatham, New Jersey, for Citicorp Mortgage, Inc.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion for relief from the automatic stay. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). The following will constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

On October 11, 1994, a final judgment in foreclosure was entered against Raymond Pinto's (hereinafter "debtor") residence in Oceanport, New Jersey in favor of Citicorp Mortgage, Inc. (hereinafter "Citicorp"). The foreclosure sale was scheduled for May 8, 1995. However, on May 5, 1995, the debtor filed a petition for relief under chapter 13 of title 11 of the United States Code (hereinafter "Bankruptcy Code" or "Code"). The debtor also filed a chapter 13 plan (hereinafter "plan"). The proposed plan values the debtor's residence at $230,000.00 and provides that the debtor will pay the full value of the collateral over a 60 month period in monthly payments of $2,069.37 plus a balloon payment on the 60th month.

The filing of the debtor's petition and plan precipitated Citicorp moving for relief from the automatic stay on August 10, 1995 in order to conduct a foreclosure sale. Citicorp argues that its judgment lien is not adequately protected because the debtor's proposed plan does not provide for real estate taxes, hazard and flood insurance, and there is no evidence of the debtor's ability to refinance the premises 60 months after confirmation. In addition, Citicorp contends that the debtor's plan is not confirmable because the debtor proposes to bifurcate Citicorp's lien in violation of Code section 1322(b)(2). Citicorp also asserts that the mortgage instrument was extinguished because it merged into the foreclosure judgment, thereby obligating the debtor to pay the amount determined by the final judgment in foreclosure.

In contrast, the debtor argues that Citicorp's motion should be denied and that the proposed plan should be confirmed because Citicorp's lien may be bifurcated because the mortgage instrument creates liens on both the debtor's residence and additional collateral.

Three issues will be addressed in this opinion. The first issue is whether the plan fails to provide Citicorp with adequate protection because it does not provide for the payment of real estate taxes and insurance. The second issue is whether a debtor in a chapter 13 case may modify the rights of an undersecured mortgagee under Code section 1322(b)(2) when the mortgage is secured by collateral in addition to the debtor's residence. The final issue is whether a prepetition foreclosure judgment precludes modification of the mortgagee's secured claim because the terms of the mortgage have "merged" into the judgment. For the following reasons, the court concludes that the debtor's plan must provide for the payment of real property taxes and insurance; Citicorp's mortgage may be bifurcated; and the security interest established by the mortgage instrument survives the foreclosure judgment.

### CONCLUSIONS OF LAW

#### I.  ADEQUATE PROTECTION

Section 362(d) provides that the automatic stay may be lifted in the following circumstances:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under section (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

A secured creditor lacks adequate protection if there is a threat that the value of the property may decline. *In re Jones,* 189 B.R. 13, 15 (Bankr.E.D.Okl.1995) (citing *In re Elmira Litho, Inc.,* 174 B.R. 892, 902 (Bankr.S.D.N.Y.1994)). A threat of decline exists when there is a failure to maintain property insurance. *Id. See also In re Clayburn,* 112 B.R. 434, 435 (Bankr.N.D.Ala. 1990) (taking judicial notice that auto insurance was required to avoid stay litigation and to avoid objections to chapter 13 plan by lienholders as not providing adequate protection). Moreover, the failure to provide for real property taxes may also be a basis for a finding of lack of adequate protection. *In re Briggs Transp. Co.,* 780 F.2d 1339, 1349 (8th Cir.1985); *In re James River Assoc.,* 148 B.R. 790, 796 (E.D.Va.1992), *vacated,* 156 B.R. 494 (E.D.Va.1993) (citations omitted). Thus, the debtor's proposed plan must include a provision for the payment of real estate taxes and appropriate insurance coverage.

## II. BIFURCATION OF CITICORP'S CLAIM

The next issue that will be addressed is whether Citicorp's claim may be bifurcated. Code section 1322(b)(2) provides that a chapter 13 plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). Thus, according to this Code section, "the rights of creditors whose claims are secured *only* by a mortgage on the debtor's principal residence may not be modified." *In re Johns,* 37 F.3d 1021, 1023 (3d Cir.1994) (emphasis in original).

A secured claim is defined by Code section 506(a) as an "allowed claim of a creditor secured by a lien on property in which the estate has an interest ... to the extent of the value of such creditor's interest in the estate's interest in such property ..." 11 U.S.C. § 506(a). The parties agree that the total amount of Citicorp's claim is $282,-055.38. There is a dispute, however, regarding the secured portion of that claim. The debtor alleges that Citicorp's secured claim is only $230,000.00. In contrast, Citicorp alleges that its secured claim is $280,000.00 based on an independent appraisal dated December 9, 1994. The only evidence proffered by either party to substantiate the value of the debtor's residence was the appraisal submitted by Citicorp. An evidentiary hearing will be necessary to resolve this dispute.

Assuming that the value of the property assigned by the debtor is correct, he contends that the proposed bifurcation of Citicorp's lien is permissible under the Code because Citicorp's security interest is not limited to the debtor's residence. The mortgage instrument provides that in addition to a lien on the debtor's residence, Citicorp holds a lien upon:

> [a]ll improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.

Moreover, the mortgage document provides that a lien would also attach to certain "funds" to be held in escrow to provide for payment of yearly real estate taxes and hazard insurance premiums.

In *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court ruled that a debtor is precluded from modifying the undersecured portion of a mortgage when "the lender's claim is secured *only* by a lien on the debtor's principal residence." *Id.* at 330, 113 S.Ct. at 2111. (emphasis added).

The Third Circuit has ruled that the Supreme Court's decision in *Nobelman* did not address a situation where, as here, the mortgagee has an additional security interest in property other than the real estate which is the mortgagor's primary residence. *In re Hammond,* 27 F.3d 52, 56 (3d Cir.1994). In *Hammond,* the Third Circuit held that "a mortgagee who has an additional security interest in property other than the real es-

tate which is the mortgagors' primary residence cannot claim any benefit from section 1322(b)(2)'s antimodification provision and therefore such a mortgagee's claim can be bifurcated under section 506(a)." *Id.* at 56 (citing *Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d 918, 925–26 (3d Cir.1992); *Wilson v. Commonwealth Mortg. Corp.,* 895 F.2d 123, 128 (3d Cir.1990)). · The court concluded that a mortgagee that wants to take advantage of· the antimodification provision of section 1322(b)(2) "must limit its lien to the real estate." *Id.* at 57. *See also In re Johns,* 37 F.3d at 1024 (holding that a mortgage instrument which secured "any and all appliances, machinery, furniture and equipment" may be bifurcated because the mortgage secures both the residence and personal property of the debtor); *In re Tallo,* 168 B.R. 573 (Bankr.M.D.Pa.1994) (finding that a security interest in rents, issues and profits takes the mortgage beyond the protection of section 1322(b)(2)'s antimodification clause).

In the present case, Citicorp has a security interest in the debtor's residence as well as additional collateral, including rents, profits, issues, fixtures and an escrow account. The Third Circuit noted in *Hammond* that it held in *Wilson* that "... creditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification." *Hammond,* 27 F.3d at 57. Based on the Third Circuit's decisions in *Hammond* and *Johns,* it is clear that Citicorp's claim may be bifurcated because it has a security interest in collateral other than the debtor's residence.

Nonetheless, Citicorp, relying upon the consolidated cases of *In re Hirsch* and *In re Kane,* 166 B.R. 248 (E.D.Pa.1994), argues that its claim is protected by the antimodification provision of section 1322(b)(2) because Citicorp did not actually take an additional security interest in the additional collateral. Moreover, Citicorp asserts that the additional collateral must have a distinctive nature and ascertainable value or be specifically described in the security instrument in order to preclude the antimodification protection of section 1322(b)(2). ·

In *Hirsch,* the court held that the mortgagee's additional security interest in improvements, "easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures" did not preclude the application of the antimodification provision in section 1322(b) for claims secured only by real property which is the debtor's principal residence. The court reasoned that because the language in the *Hirsch* mortgage instrument was in all material respects identical to the mortgage instrument at issue in *Nobelman,* the mortgage falls within the scope of the antimodification provision in section 1322(b)(2). *Id.* at 254. The district court also determined that the *Kane* mortgage, which covered the debtor's home and other collateral, including appliances, machinery, furniture and equipment, was also protected by the antimodification provision because the mortgagee did not actually take a security interest in the additional collateral and the collateral was devoid of any independent value. *Id.* at 254–55. *See also In re Brown,* 189 B.R. 3 (Bankr.E.D.Pa.1995) (holding that a security interest in the same items at issue in the present case did not preclude the application of the antimodification provision in Code section 1322(b)(2) because unaccrued "rents," the only additional collateral at issue, are reversionary real property under Pennsylvania law).

Citicorp's reliance on *Hirsch* is misplaced because the Third Circuit's decision in *Hammond* has effectively overruled *Hirsch.* The judge in *Hirsch* disagreed with the district court opinion in *Hammond* that was subsequently affirmed by the Third Circuit. *Hirsch,* 166 B.R. at 255. *See also In re Bernhardt,* 186 B.R. 889, 890 (Bankr.E.D.Pa. 1995). Moreover, Citicorp's contention that it did not actually take an additional security interest in the property or that the property lacks value does not negate the result. The Third Circuit held in *Wilson* that the subjective intent of a mortgagee to actually obtain an interest in the additional collateral is irrelevant because the language of section 1322(b)(2) is unambiguous. ·*Wilson,* 895 F.2d at 129. In addition, the court determined that the mortgagee's argument that its secu-

rity interest in appliances, machinery, furniture and equipment lacked independent value was also without merit because they are patently items of independent value. *Id.* at 129. *See also In re Sapos,* 967 F.2d at 924–25 (holding that a mortgagee's security interest in wall-to-wall carpeting which was, under the terms of the mortgage, a fixture, and in rents, issues, and profits, did not preclude bifurcation under section 1322(b)(2)).

The Third Circuit has determined that the language of section 1322(b)(2) plainly states that a mortgagee who has an additional security interest does not get the benefit of the antimodification provision. *Hammond,* 27 F.3d at 57; *Wilson,* 895 F.2d at 129. Thus, Citicorp's security interest in additional collateral removes it from the antimodification provision. Unless and until Congress or the Supreme Court directs otherwise, Citicorp must limit its security interest to a debtor's residence to be afforded the protection of the antimodification provision in section 1322(b)(2).

### III. MERGER OF MORTGAGE INTO FORECLOSURE JUDGMENT

■ Citicorp also asserts that because the mortgage has been foreclosed, the terms of the mortgage "merge" into the foreclosure judgment of the New Jersey Superior Court and thereby cease to exist, leaving Citicorp with a judgment lien. Citicorp argues that as a result, the mortgage cannot be reinstated and the clauses providing additional security were extinguished with the merger of the mortgage into the judgment.

The Third Circuit has held that, under New Jersey law, once a foreclosure judgment has been entered, the former mortgage merges in that final judgment and is thereby extinguished. *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987). However, in *Johns,* the Third Circuit ruled that although a foreclosure judgment terminates the mortgage, the security interest taken by the mortgagee survives for purposes of section 1322(b)(2). *Id.* In that case, the mortgagee argued, as here, that its security interest in the debtor's personalty no longer existed because the mortgage instrument merged into the foreclosure judgment under Pennsylvania law.

Initially, the court determined that the mortgagee could not claim the protection of the antimodification provision in section 1322(b)(2) as a judicial lienholder because that section only provides protection to claims secured by a security interest in the debtor's house, which could only be created by an "agreement." *Id.* at 1025 (citing *First Nat. Fidelity Corp. v. Perry,* 945 F.2d 61, 64 (3d Cir.1991)). A judgment lien, the court found, was not created by an agreement. *Id.* Relying on its earlier decision in *Perry,* the Third Circuit found that a security interest for purposes of section 1322(b)(2) continues to exist after a foreclosure judgment. *Id.* Moreover, the court noted that the mortgagee:

has not demonstrated why it should be favored over other secured creditors just by virtue of having reduced its claim to a foreclosure judgment.... The original contract with [the debtor], which specified that the mortgagee would be secured not only by a mortgage on her principal residence but also by a security interest in her personalty, fell within the exception found in § 1322(b)(2). [The mortgagee] cannot now escape from that exception by relying on its status as the holder of a non-consensual judgment and thereby gain the protection that had originally been given up when a security interest in both real and personal property had been sought and taken. Nor can it obtain that protection by now foregoing part of the security, i.e. the personalty, which it originally required.

*Id. See also Bernhardt,* 186 B.R. at 890 (finding that *Johns* expressly rejects the mortgagee's argument that the merger of the debtor's mortgage with the pre-petition foreclosure judgment should eliminate any security interest taken in the debtor's personalty).

Based on the Third Circuit's opinion in *Johns,* the court must conclude that, although Citicorp's mortgage "merged" into the foreclosure judgment, its security interest in the debtor's home and additional collateral survives the judgment. Thus, Citicorp's claim may be bifurcated into secured

and unsecured claims under Code sections 1322(b)(2) and 506(a).

## IV. THE FULL FAITH AND CREDIT CLAUSE

■ Code section 1322(c)(1) grants a debtor the right to cure a default in relation to a lien on the debtor's principal residence up to foreclosure sale. Citicorp argues that any interpretation of section 1322(c)(1) which would allow a debtor to abrogate a final judgment and revive an extinguished mortgage would violate the "full faith and credit" clause of the U.S. Constitution. U.S. CONST. art. 4, § 1. However, Citicorp cites no authority for the proposition, and provides no analysis to support it. The court therefore rejects the argument summarily.

## CONCLUSION

For the foregoing reasons, the court holds that the debtor is permitted to bifurcate Citicorp's claim in his plan. The debtor's plan must, however, provide for the payment of flood and hazard insurance and real estate taxes. As previously noted, a hearing must be conducted to determine the value of the collateral. The feasibility of the balloon payment at the end of the plan must be determined as well.