**In re Glenda BLAIR.**

**Bankruptcy No. 95–41569 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 28, 1996.

478

Gwendolyn Hodge, Little Rock, AR, for USA.

Thomas Byarlay, Little Rock, AR, for Glenda Blair.

David Coop, Chapter 13 Trustee.

## ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the "Objection of the United States of America, U.S. Department of Agriculture, to Confirmation of Plan," filed on July 17, 1995. Upon motion of the United States, the parties submitted briefs on the "legal issues contained in the Objection."[1] Although the case file is before the Court on an objection to confirmation pursuant to the Court's independent duty to determine whether the plan may be confirmed, there were insufficient facts properly before the Court to make a determination of the stated issue. Accordingly, the parties submitted a stipulation of facts to aid the Court in determining whether the debtor properly provides for payment of the secured debt.

Although the creditor Rural Economic Community Development ("RECD") obtained an *in rem* judgment of foreclosure in 1987,[2] the debtor proposes to pay the regular monthly payment of $371 per month and $140 per month to cure the arrearage on the debt. The RECD objects to this treatment, asserting that, under state law, the mortgage merged into the foreclosure judgment such that it cannot be broken down into "current" and "arrearage" payments extending beyond the term of the plan.

The stipulated facts are as follows:

"1. On July 16, 1982, Mr. and Mrs. Blair executed a Note and Mortgage in the principal sum of $32,500. The residence of the Debtors is the sole collateral securing payment of said Note.

"2. On May 15, 1986, Rural Economic and Community Development ("RECD" and formerly known as Farmers Home Administration) filed Complaint of Forfeiture as a result of default on the above described Note and Mortgage.

"3. Default Judgment was entered on January 12, 1987 in the amount of $45,628.58.

"4. Sale of the real property securing the Note was held on June 5, 1995.

"5. Debtors filed a Petition in Bankruptcy on June 6, 1995, before confirmation of the sale."

The original agreement between the parties is not before the Court.[3] Accordingly, there is no evidence before the Court as to the length of the original agreement, *i.e.*, whether the "last payment" under the terms of the agreement was due before or after the time the last payment under the plan will be due. The debtor's brief also references and quotes an Order of the state court. That Order has not been submitted to the Court.

The Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994, provides that

---

1. The United States brief indicates that it is also meant to support a motion to terminate stay, or in the alternative, to dismiss the bankruptcy case. No such motions are contained in the court file. Nor has the United States presented evidence regarding such motions. Accordingly, the Court rules only upon the objection to confirmation and the evidence presented by the parties.

Despite the numerous indications in the Court file that an objection to confirmation on the grounds of bad faith may have been in order, there is no evidence before the Court to make such a determination. Indeed, without such evidence the ability of the Court to make such a determination under its independent duty is diminished.

2. According to the Court's docket, this is the debtor's second bankruptcy case filed to preclude sale of their residence. *See In re Blair*, No. 87–40413 (Chapter 13 filed 1987).

3. Although the note is appended to the United States objection to confirmation, it was not included as an exhibit to the stipulation. Accordingly, it was not placed in evidence before the Court. Neither pleadings, nor attachments to pleadings, are evidence unless properly introduced at trial, introduced pursuant to another rule, *see e.g.*, Fed.R.Civ.Proc. 56(e), or otherwise stipulated to as evidence.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(5) notwithstanding paragraph (2) of this subsection, *provide for the curing of any default* within a reasonable time and maintenance of payments while the case is pending *on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;*

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a *default* with respect to, or that gave rise to, a lien on the principal residence *may be cured* under paragraph (3) or (5) of subsection (b) *until such residence is sold at a foreclosure sale* that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

(e) Notwithstanding subsection (a) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(b)(2), (b)(3), (b)(5), (c), (e) (emphasis added).

The United States argues that the default to be "cured" under the statute is not the original note, but, rather, the judgment of foreclosure since by operation of state law, the debt merged into the judgment. Thus,

the United States argues, there is no "arrearage" to cure and there is merely a debt which must be paid over the life of the plan. The Court finds that neither the language of the statute nor rule of law which has long been followed in this Circuit support this argument.

One of the primary concerns of Congress in enacting provisions and amendments to the Bankruptcy Code was to protect the ability of individuals to maintain their personal residences. In an effort to ensure that individuals be able to continue living in their homes, Chapters 12 and 13 provide for "cure" of a "default" of the debt of debtor's principal residence. 11 U.S.C. §§ 1322(b)(5), 1222(b)(5). Section 1322(b)(2) of the Bankruptcy Code provides the general rule that the debtor may not modify the rights of holders of a claim secured only by the debtor's residence. The "rights" referenced in this paragraph are those rights under the original contract of the parties. *See Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (Section 1322(b)(2) specifically protects rights of the particular class of lenders, which rights are reflected in the contract between the lender and debtor). Section 1322(b)(5) then provides a limited exception to this rule: a debtor may cure "any default" and maintain payments on any claim "on which the last payment is due after the date on which the final payment under the plan is due." The term "last payment," like the term "rights" refers to the last payment due under the terms of the original note, not the terms of any subsequent foreclosure decree or the date the debt is due under terms of acceleration. *See In re Sims,* 185 B.R. 853, 856–57 (Bankr.N.D.Ala.1995). Thus, under section 1322(b)(5), a debtor may cure default of home mortgage obligations for which, the last payment is due after the conclusion of the bankruptcy case.

This right to cure, however, has a time limitation. It makes no sense for example, that a debtor should be able to reinstate the contract after a foreclosure sale and possession by a subsequent purchaser. Until passage of the Bankruptcy Reform Act of 1994, there was a split in the circuits as to wheth-

er, in a Chapter 13 case, a cure could take place after entry of a decree of foreclosure. In the Third Circuit, the debtor's right to cure ceased upon entry of the judgment of foreclosure. *In re Roach,* 824 F.2d 1370 (3d Cir.1987). In other circuits, the right to cure continued until the time of the foreclosure sale. *See Justice v. Valley National Bank,* 849 F.2d 1078 (8th Cir.1988) (Chapter 12); *In re Glenn,* 760 F.2d 1428 (6th Cir.1985) (Chapter 11), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984) (Chapter 13).

■ To resolve this split in the Circuits and clarify their earlier intent, in 1994, Congress amended section 1322 to add new subsection (c). Under new subsection 1322(c)(1), the debtor may only cure the default until such time as the residence is sold at a foreclosure sale. Thus, the Bankruptcy Reform Act of 1994 clarified to what point in Chapter 13 cases a debtor may cure a default in a residential mortgage. This amendment did not change the rule in most circuits, including the Eighth Circuit, but had the effect of overruling *Roach* in the Third Circuit. Thus, in Arkansas, a debtor's right to cure a default of a mortgage until the time of "sale" remained the same before and after passage of the Bankruptcy Reform Act of 1994. The passage of this section did not change the law that the debtor had the right to cure until the time of sale. For purposes of section 1322(b)(2), the security interest taken by the mortgagee survives. *In re Pinto,* 191 B.R. 610 (Bankr.D.N.J.1996).

■ The term "default" as used in both subsections 1322(b) and 1322(c) necessarily encompasses the time past entry of a judgment of foreclosure because the statute provides for cure until the residence is actually sold at a foreclosure sale. To argue that a mortgage cannot be cured beyond entry of the judgment has the effect of nullifying section 1322(c)(1). For purposes of sections 1322(b)(5) and 1322(c)(1), the fact that the debt merged into the judgment under state law does not obviate the debtor's right to cure the default of the mortgage obligations. That which is to be cured under the plan is not the judgment, as argued by the United

States, but, rather, the default in the mortgage, despite entry of the foreclosure judgment. *In re Pinto,* 191 B.R. 610 (Bankr. D.N.J.1996); *Johns v. Rousseau Mortgage Corp. (In re Johns),* 37 F.3d 1021 (3d Cir. 1994).

■ Determination of whether the sale is final is made under state law. *In re Ross,* 191 B.R. 615 (Bankr.D.N.J.1996) ("We accept the latter construction, i.e., that a 'final' sale, as determined by applicable state law, controls as the termination point for the right to cure default under § 1322(c)(1)."). *See Justice v. Valley National Bank,* 849 F.2d 1078 (8th Cir.1988). As a general rule, under Arkansas law, a sale of property is not complete until confirmation of the sale by the Chancery Court. *Fleming v. Southland Life Ins. Co.,* 263 Ark. 272, 564 S.W.2d 216 (1978). In the instant case, the parties stipulated that the sale was not confirmed, and, thus, was not final under state law.

■ The evidence before the Court is that the parties entered into a long-term mortgage agreement, the last payment under which, presumably, is due after the date on which the final payment under the plan is due. Although a judgment of foreclosure was entered, Section 1322(b)(5) provides that the debtor may cure this default since the sale of the residence was not made final under Arkansas law, 11 U.S.C. § 1322(c)(1), prior to the time the petition was filed. Accordingly, the debtor's plan, the terms of which provide for cure of the arrearage within a reasonable time, and payment of the monthly payments pursuant to the terms of the original contract, may be confirmed. It is

**ORDERED** that the Objection of the United States of America, U.S. Department of Agriculture, to Confirmation of Plan, filed on July 17, 1995, is OVERRULED, in part. The Objection is SUSTAINED to the extent that the plan fails to make provision for payment of property taxes and insurance. The debtors shall file an amended plan and shall provide proof of insurance to the credi-

tor, within fifteen (15) days of entry of this Order.

**IT IS SO ORDERED.**