**In re William Dean BOOKOUT and Carol L. Bookout, Debtors.**

**Bankruptcy No. 98–10272M.**

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

March 18, 1999.

David D. Coop, North Little Rock, AR, Trustee.

Paul E. Hopper, Horseshoe Bend, AR, for debtors.

Michelle C. Huff, Cherokee Village, AR, for First National Bank of Sharp County.

## ORDER

JAMES G. MIXON, Chief Judge.

The matter before the Court is an objection to confirmation by First National Bank of Sharp County ("Bank"). The Bank objects to the proposed chapter 13 plan of reorganization of William and Carol Bookout ("Debtors") on the grounds that the plan impermissibly modifies the rights of the Bank, which purports to hold a claim secured only by a security interest in the Debtors' principal residence. After a hearing on September 15, 1998, the Court took the matter under advisement.

This is a core proceeding pursuant to 11 U.S.C. § 157(L), and the Court has jurisdiction to enter a final judgment in the case.

## FACTS

On January 19, 1994, the Debtors executed a promissory note payable to the Bank in the principal sum of $39,000.00. The note was to be repaid in full over ten years with interest accruing at the rate of 8.75% per annum in equal monthly installments of $478.37. As security for the repayment of the indebtedness, the Debtors granted the Bank a mortgage lien (security interest) in two separate parcels of real property located in Izard County, Arkansas. The two parcels of real estate constitute the Debtors' principal residence.

On February 20, 1997, the Debtors executed a second promissory note in favor of the Bank in the principal sum of $4,930.89. The note was to be repaid in full with interest accruing at the rate of 10% per annum in equal monthly installments of $124.34 beginning March 5, 1997. As security for the repayment of the indebtedness, the Debtors granted the Bank a mortgage lien (security interest) in the Debtors' principal residence previously described.

When the Debtors defaulted on their obligations under the notes, the Bank initiated foreclosure proceedings in the Chancery Court of Izard County. A Decree of Foreclosure was filed of record in the office of the Circuit Clerk of Izard County, Arkansas, on June 19, 1998. The Decree granted a personal judgment against the Debtors in favor of the Bank for $38,338.45, including attorneys' fees, decreed that the Bank held a first lien on the Debtor's principal residence, and ordered the property sold if the judgment was not paid within twenty days from the date of judgment.

Before the property was sold at a foreclosure auction, the Debtors filed a voluntary petition for relief under the provisions of

chapter 13 of title 11 on July 16, 1998. Their Schedule A—Real Property lists all real property in which the Debtors claim an interest. The schedule includes the two parcels previously mortgaged to the Bank and a third parcel of real property designated as "Tract B." (Schedule A—Real Property.) The three tracts comprise one entry on the schedule and are described as "Homestead located in Izard County, Arkansas." The Debtors list the aggregate value of the three tracts at $67,000.00, subject to a secured claim estimated to be $40,000.00. In the Debtors' Schedule C—Property Claimed as Exempt, the Debtors claim a homestead exemption in the three tracts.

The Narrative Statement of Plan filed August 3, 1998, provides that "[b]ecause the note and mortgage on the secured homestead have been foreclosed, debtors will pay $400 per month to FNB Sharp County until other financing can be arranged. Creditor will be paid 100% of claim...." (Narrative Statement of Plan at 4.) The Debtors' plan is for a 36–month period commencing with the filing of the plan. The plan also provides that interest will accrue on the Bank's claim at the rate of 8% per annum.

On August 20, 1998, the Bank objected to confirmation of the plan on the grounds that the Debtors had violated 11 U.S.C. 1322(b)(2) by impermissibly modifying the Bank's rights as a holder of a security interest in the Debtors' principal residence. The Debtors responded that the foreclosure decree had granted the Bank a judgment lien in the previously mortgaged property and in other real and personal property owned by the Debtors. Thus, the Debtors argued, the Bank lost its anti-modification protection because it held a judgment lien in the Debtors' residence and a "general lien" in the Debtors' other property.

## ARGUMENT

The Debtors argue two theories in support of the right to modify the Bank's secured claim. The first argument is that the Bank's claim is no longer secured by a security interest in the Debtors' principal residence because the judgment lien created by the foreclosure is not a security interest as de-fined by the Bankruptcy Code. The second theory is that the foreclosure decree created a lien in a separate tract of real estate across the road from the Debtors' principal residence. Therefore, the Debtors argue, under either theory the Bank's claim is not entitled to the anti-modification protection of 11 U.S.C. § 1322(b)(2) because it is not secured only by a security interest in the Debtors' principal residence.

## DISCUSSION

### I.

The facts are not in dispute. The Debtors consider all three tracts of land as their homestead. The Bank's mortgage lien encumbers two contiguous tracts where the Debtors' principal residence and curtilage are located. The Bank's mortgage lien does not extend to the third tract, which is separated from the house and yard by a road and which contains about 60 acres. However, under Arkansas law, the recording of the judgment of foreclosure with the Circuit Clerk of Izard County created a judicial lien on the third tract of real property. Ark. Code Ann. § 16–65–117(a)(1)(A) (Michie Supp.1997).

The Bankruptcy Code provides in relevant part that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the Debtor's principal resi-dence...." 11 U.S.C. § 1322(b)(2) (1994).

The Bankruptcy Code defines a security interest as a "lien created by an agreement." 11 U.S.C. § 101(51). A judicial lien is de-fined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable pro-cess or proceeding." 11 U.S.C. § 101(36). In this case a judicial lien in the Debtors' principal residence is created under state law because of the entry of the personal judg-ment against the Debtors. However, this lien is superfluous because the decree also affirmed the existing first security interest in favor of the Bank and ordered that security interest foreclosed.

Although a judicial lien arises out of a foreclosure judgment, under the law of some states, many courts hold that the existence of

such a lien does not result in the forfeiture of anti-modification protection that otherwise would have been available to a mortgagee had a foreclosure decree not been entered. *Johns v. Rousseau Mortgage Corp. (In re Johns),* 37 F.3d 1021, 1025 (3d Cir.1994) ("although the foreclosure judgment terminated the mortgage, ... the security interest taken by [mortgagee] survives in toto"); *Seidel v. Larson (In re Seidel),* 752 F.2d 1382, 1386 (9th Cir.1985) (fact that amount of mortgagee's lien has been fixed by foreclosure decree does not deprive mortgagee of status of secured creditor) (quoting *In re Collins,* 19 B.R. 209, 211 (Bankr.S.D.Fla.1982)); *Laws v. New York Guardian (In re Laws),* 163 B.R. 449, 452 (E.D.Pa.1994) (status of mortgagee and its security interest is unchanged by foreclosure judgment); *In re Pinto,* 191 B.R. 610, 614–15 (Bankr.D.N.J.1996) (despite judgment lien, security interest continues to exist for purposes of section 1322(b)(2)) (citing *Johns v. Rousseau Mortgage Corp. (In re Johns),* 37 F.3d 1021 (3d Cir.1994)); *Peoples First Nat'l Bank v. Haraschak (In re Haraschak),* 169 B.R. 325, 326 (Bankr.M.D.Pa. 1994) (if the mortgage is entitled to section 1322(b)(2) protection, then the judgment pursuant to the mortgage is similarly protected).

Courts espousing this view recognize that while a foreclosing home mortgagee may obtain a judicial lien in a foreclosure judgment, the original security interest set out in the mortgage remains intact for purposes of the section 1322(b)(2) anti-modification protection. This view supports the underlying Congressional policy of singling out home lenders for extra protection in bankruptcy proceedings and thus encouraging the accessibility of home mortgages at affordable terms. *First Nat'l Fidelity Corp. v. Perry,* 945 F.2d 61, 63–64 (3d Cir.1991) (quoting Bankruptcy Reform Act of 1978: Hearings on S.2266 and H.R.8200 Before the Subcomm. On Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 707, 715 (1977) (statement of Robert E. O'Malley)).

■ This view is also consistent with the intent of Congress to limit the ability of Debtors to modify "home mortgages" in order to "encourage the increased production of homes and to encourage individual ownership of homes as a traditional and important value in American life." *Federal Land Bank v. Glenn (In re Glenn),* 760 F.2d 1428, 1434 (6th Cir.1985), *cert. denied sub nom. Miller v.. First Federal of Mich.,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). This Court finds persuasive the view that a security interest survives a foreclosure judgment for purposes of anti-modification prohibition, even if the foreclosure judgment grants a lien in the same property by operation of law.

## II.

The Debtors second theory is not easily disregarded. The Debtors, unlike a more typical debtor, own a 60–acre tract of substantially unencumbered real property separated only by a road from the real property subject to the Bank's mortgage. The personal judgment against the Debtors contained in the foreclosure decree constitutes a judicial lien against the 60 acres, which serves as security for the repayment of the Bank's claim. Therefore, the real property is subject to being sold to satisfy the Bank's claim. See Ark.Code Ann. § 16–66–401 (Michie 1997).[1]

■ Research has not revealed any written opinion with facts similar to the present case. Although Congress may not have anticipated the unique facts that exist here, it cannot be disputed that on the date the petition was filed the Bank's claim was secured by a security interest in the Debtors' principal residence and a judicial lien in sixty additional acres of real property. To hold, under these facts, that the Bank's claim is "secured only by a security interest in the Debtors' principal residence" requires the

1. The 60 acres was claimed as an exempt homestead under the provision of the Arkansas Constitution providing for rural homestead. *See* Ark. Const., art IX, § 4. *See, e.g., In re Weaver,* 128 B.R. 224 (Bankr.W.D.Ark.1991) (debtor entitled to rural homestead of ten acres). If the Debtors' exemption claim is valid, this property is not subject to an execution sale as long as it is occupied by the Debtors as a homestead. Ark. Const., art. IX, § 3. However, the property is subject to sale once it is abandoned as a homestead, which will inevitably occur in the future.

310

Court to ignore the unambiguous language of the applicable statute. Such a holding would be contrary to law. Therefore, under the facts of this case, the Bank's claim may be modified pursuant to the terms of a chapter 13 plan.

However, the plan currently proposed and the Debtors' schedules are inconsistent. The plan in a pre-printed paragraph estimates the value of the Bank's collateral at $37,-000.00, but Schedule A values the real estate encumbered by the mortgage and the judgment lien at $67,0000.00. One provision of this plan provides that the Bank will be paid the "value of collateral," listed at $37,000.00, but other provisions contemplate paying the Bank's claim in full.

If the Bank's claim is fully secured, the Bankruptcy Code provides that a plan shall be confirmed if:

> with respect to each allowed secured claim provided for by the plan—the plan provides that the holder of such claim retain the lien securing such claim; and the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim....

11 U.S.C. § 1325(a)(5)(B)(i)–(ii) (1994).

■ In other words, the plan must propose to pay the claim in full plus interest at the market rate. *General Motors Acceptance Corp. v. Valenti (In re Valenti)*, 105 F.3d 55 (2d Cir.1997) (observing that full payment under section 1325(a)(b)(B)(ii) requires interest to be paid on the amount presently owing) (citing *Bellamy v. Federal Home Loan Mort. Corp. (In re Bellamy)*, 962 F.2d 176 (2d Cir.1992)).

■ The plan in this case proposes to pay the Bank $400.00 per month until "other financing can be arranged." This provision is too vague. *Accord, In re Erickson*, 176 B.R. 753, 756–57 (Bankr.E.D.Pa.1995) (holding plan to be funded by sale of property at unspecified future date and price is not feasible; debtor's remote speculation as to proposed sale was not sufficient). The Debtors' plan must provide that the Bank's claim will be paid on or before a specific date and within the 36–month life of the plan.

Therefore, for the reasons stated, the objection to confirmation is sustained and the Debtors have twenty days to file a modified plan consistent with this memorandum.

IT IS SO ORDERED.