In re Peter J. LIBBY and Diane R. Libby, Debtors.

Bankruptcy No. 95–21783 (WFT).

United States Bankruptcy Court, D. New Jersey.

Sept. 19, 1996.

Edward S. Seradzky, Bloomfield, NJ, for Debtors.

Loikith, D'Alessio & Kugelman, P.C., by Thomas Loikith, Fairfield, NJ, for Columbia Savings Bank.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter comes before the Court by way of motion of debtors, Peter J. Libby and Diane Ruth Libby (the "Debtors"), to bifurcate the second mortgage claim of Columbia Savings Bank ("Columbia Savings") on the Debtors' principal residence, commonly known as 388 West Oakland Avenue, Oakland, New Jersey (the "Property") into secured and unsecured components pursuant to section 506(a) of the Bankruptcy Code, and to strip down the second mortgage lien of Columbia Savings to the fair market value of the debtors' property. The debtors also seek a determination by this court that the second mortgage is not subject to the protection of the anti-modification provisions of Section

1322(b)(2) of the Code. In addition, the Debtors move that a third mortgage held on the Property by Urban National Bank be treated as totally unsecured.

The Debtors filed their motion on May 9, 1996. Columbia Savings responded to the Debtors' motion with a letter brief filed on June 4, 1996. No response or objection was filed by Urban National Bank. A hearing was held before this Court on June 17, 1996. This Court reserved decision on the issue of whether the second mortgage may be stripped down into secured and unsecured portions.

At the hearing on this matter, the Court requested that if the Debtors claim that Columbia Savings held a bank account of the Debtors, then they should provide an affidavit giving details of the account. Subsequent to the hearing, the Debtors submitted a letter claiming at the time that the second mortgage was executed on August 23, 1988, Columbia Savings had under its control an escrow account of the Debtors relating to their first mortgage. Columbia Savings responded with a letter brief and affidavit in opposition to the Debtors' letter.

The issues raised in this matter are core proceedings as defined in 28 U.S.C. § 157. This Court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. Columbia Savings made two loans to the Debtors, Peter and Diane Libby. The first was evidenced by a note and mortgage, dated July 14, 1983, in the original principal amount of $85,000.00. The second was evidenced by a note and mortgage dated August 24, 1988, in the original principal amount of $85,000.00. Subsequent to the second mortgage, Urban National Bank loaned the Debtors money secured by a third mortgage in the amount of $150,000.00. All the mortgages encumber the Property.

2. The second loan from Columbia Savings was secured by a second mortgage on the Debtors' home. In addition to identifying the Property as the primary security, the mortgage note included a paragraph identifying "additional security" interests. The paragraph reads as follows:

> As additional security for the Mortgage and this Agreement, I give you a security interest and a right to set-off any and all money, securities and other personal property on deposit or in your possession or control. You may make any set-off without notice to me. If my account is a savings certificate account, any penalties required by law may be deducted from the account as if I had withdrawn the money to pay you.

3. The Debtors failed to make payments on October 1, 1991 for the first mortgage and on August 18, 1991 for the second mortgage. (Affidavit of Elizabeth Young in support of Motion to Terminate Automatic Stay, dated February 15, 1996, ¶ 2). A series of multiple bankruptcy filings by the debtors has occurred since that time ending with the debtors fourth filing in the case *sub judice*.

4. Specifically, the debtors initially filed for relief under chapter 7 of the Bankruptcy Code on February 7, 1992 (Case No. 92–20990). The debtors were discharged in this matter and the Standing Trustee abandoned his interest in the property. (Young Affidavit at ¶ 3).

5. On August 11, 1992 Columbia Savings instituted a foreclosure action in the Superior Court of New Jersey, Chancery Division, Bergen County. The final judgment of foreclosure and the writ of execution were entered on September 9, 1993.

6. The sheriff's sale was apparently initially scheduled for December 8, 1993 but at the request of the debtors, the sale was adjourned to January 5, 1994 and then again to February 2, 1994. (Young Affidavit at ¶ 6).

7. On February 2, 1994, the debtors again filed for bankruptcy seeking relief under chapter 13 of the Bankruptcy Code. (Case No. 94–20603). (Young Affidavit, ¶ 7).

8. On April 4, 1994 this Court signed an order upon motion by the Standing Trustee, dismissing the petition for failure to make payments or file a plan. On April 6, 1996, this Court further granted Columbia Savings'

motion for stay relief so as to allow Columbia Savings to proceed with its foreclosure.

9. The sheriff's sale was rescheduled for July 27, 1994. On July 26th, 1994, one day prior to the rescheduled sale, the debtor filed a third petition for relief, this time under chapter 13 of the Bankruptcy Code, (Case No. 94–25141), once again staying the sheriff's sale. (Young Affidavit, ¶ 10).

10. Columbia Savings once again moved for relief from the automatic stay. On December 12, 1994, the return date of the motion, the debtor made an oral application to dismiss his petition without prejudice. On December 13, 1994, this court entered an order granting the debtor's motion to dismiss this petition without prejudice.

11. On December 23, 1994, Columbia Savings requested that the Bergen County Sheriff reschedule the sale. On March 13, 1995, the debtors then filed their fourth and current bankruptcy petition, this time once again seeking relief under chapter 13 of the Bankruptcy Code. (Case No. 95–21783). The sheriff's sale was again stayed.

12. On January 21, 1996, Columbia Savings filed a motion for relief from the automatic stay. The amount due on the judgment for the first mortgage at the time of the filing of the Debtors' petition on March 13, 1995, was $101,865.77. The amount due on the second mortgage as of the filing of the petition was $103,351.60. These totals do not include the taxed costs, the advanced taxes, and the interest thereon.

13. Debtors have filed an appraisal indicating the fair market value of the property as $153,000.00, while Columbia Savings has provided an appraisal indicating a fair market value of the property as $175,000.00. Under either appraisal, Columbia Savings is undersecured as to the second mortgage. Urban National Bank is completely unsecured as to the third mortgage.

14. The Court finds that despite the language contained in the second mortgage claiming "additional security" in the debtors' personalty, with the exception of the tax escrow account relating to the first mortgage, Columbia Savings did not actually have any money, securities or personal property on deposit or in its possession or control at the time the petition was filed. Moreover, the tax escrow account had a negative balance from October 25, 1991 through March 13, 1995, when the Debtors filed their petition.

### DISCUSSION

The specific issues before this court are first, whether the tax escrow account held by Columbia Savings in relation to the first mortgage constitutes "additional collateral" sufficient to defeat the protection afforded the Bank under the anti-modification provision § 1322(b)(2). Second, in light of this court's prior decision in *In re Eastwood*, 192 B.R. 96 (Bankr.D.N.J.1996), whether the language on the face of the mortgage document itself controls a finding of "additional security" despite the fact, as Columbia Savings argues, and this Court has found, that no security interest was actually taken in such items.

Upon a review of the record and the arguments posed by counsel in this case, this court holds that the mere use of the tax escrow account alone, in this case, in conjunction with the first mortgage, does not constitute "additional security" sufficient to defeat the protection afforded the bank under section 1322(b)(2). However, as applied to the facts herein, this court further concludes that in light of the decision(s) reached by the Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and the Third Circuit in the cases of *In re Johns*, 37 F.3d 1021 (3rd Cir.1994); *In re Hammond*, 27 F.3d 52 (3rd Cir.1994); *Sapos v. Provident Inst. of Sav. in Town of Boston*, 967 F.2d 918 (3rd Cir.1992) and *Wilson v. Commonwealth Mortg. Corp.*, 895 F.2d 123 (3rd Cir.1990) along with relevant bankruptcy court cases across the country, all of which were cited and analyzed by this court at length in *Eastwood*, 192 B.R. 96, the language on the face of the second mortgage document itself, which language clearly takes an interest in "additional security", controls and supports a finding in favor of the debtors which allows for bifurcation of the second mortgage under section 506(a) of the Bankruptcy Code. Therefore, the debt-

ors' request for a strip down of the bank's lien on the second mortgage will be granted for reasons which will be elaborated upon as follows.

### ANALYSIS

As was noted by this court in *Eastwood,* 192 B.R. at 99, the analysis which must be employed here concerns the delicate balance which must be struck regarding the interpretation and application of two provisions of the Bankruptcy Code: 11 U.S.C. § 506(a) and 11 U.S.C. 1322(b)(2). Section 506(a) defines allowed secured and unsecured claims as follows:

An allowed claim of a creditor secured by a lien upon property in which the estate has an interest, or that is subject to set off under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set off, as the case may be and is an unsecured claim to the extent that the value of such creditor's interest or the amount subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The Third Circuit has recognized that "section 506(a) limits a creditor's secured claim to the value of its collateral." *In re Hammond,* 27 F.3d at 55; see also, *Sapos v. Provident Inst. of Sav. in Town of Boston,* 967 F.2d at 921. The practice of dividing a secured lenders lien into secured and unsecured components, under section 506(a) of the Code, has been commonly referred to as "lien stripping." *In re Hirsch,* 166 B.R. 248, 249 (E.D.Pa.1994).

On the other hand, section 1322(b)(2) of the Bankruptcy Code, known as the "anti-modification" provision allows a chapter 13 debtor to modify the rights of holders of secured and unsecured claims, *except claims wholly secured by real estate mortgages on the debtor's principal residence.* (S.Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 141, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5927) (Emphasis Added).

Section 1322(b)(2) provides:

subject to subsections (a) and (c) of this section, the plan may—

modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (Emphasis added).

The Third Circuit has reviewed in detail the interplay between sections 506(a) and 1322(b)(2) of the Bankruptcy Code. As was discussed by this court in *Eastwood,* subsequent to the Supreme Court's decision in *Nobelman,*[1] a chapter 13 debtor is prohibited from relying on section 506(a) to "strip down" a lien to the value of the mortgaged premises that is the debtor's principal residence. That is, section 1322(b)(2) of the Bankruptcy Code provides that a chapter 13

---

1. In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court held that the bifurcation of a home mortgage into secured and unsecured portions and modification of the unsecured deficiency claim is not permitted in a chapter 13 case with respect to a mortgage on only the debtor's principal residence. As was discussed by the Third Circuit in *Hammond,* 27 F.3d at 56, the holding in *Nobelman* expressly overruled the holdings in *Wilson* and *Sapos* that section 1322(b)(2) does not preclude a debtor from modifying the undersecured portion of a mortgage. The Third Circuit in *Hammond* went on to state, however, that the Supreme Court's opinion in *Nobelman* did not expressly address the alternate rationale for the Third Circuit's decisions in *Wilson* and *Sapos.* That is, the finding that a mortgagee who takes an additional security interest in property other than the real estate which is the mortgagor's primary residence cannot claim any benefit from the anti-modification provision of section 1322(b)(2) and therefore such a mortgagee's claim can be bifurcated under section 506(a). *See also* Judge Wizmur's opinion in *In the Matter of Arvelo,* 176 B.R. 349, 357 (Bankr.D.N.J.1995) (stating "the Supreme Court's decision in Nobelman only overruled one aspect of the Third Circuit's decisions in *Wilson* and *Sapos;* thus these cases still have qualified precedential value.").

plan may not modify a claim that is secured only by a security interest in real property that is the debtor's principal residence. *In re Eastwood*, 192 B.R. at 101 (citing *In re Alfred R. French*, 174 B.R. 1 (Bankr.D.Mass. 1994); *In the Matter of Pruett*, 178 B.R. 7 (Bankr.N.D.Ala.1995)).

Post *Nobelman*, this court in *Eastwood*, as well as other bankruptcy courts across the country, have struggled with the question, exactly when, in light of the language contained within a mortgage document, a claim can be considered secured "only by an interest in real property that is the debtor's principal residence." 192 B.R. at 102 (citing *In re French*, 174 B.R. 1, 4 (Bankr.D.Mass. 1994)).

In *Eastwood*, this Court specifically found that the mortgage document at issue contained language referring solely to the rights associated with a fee simple estate, and that the mortgage lien did not attempt to reach collateral that was personalty. Consequently, the debtors' attempt to modify the mortgage was denied. Significantly, for today's purposes however, this court went on to find in *Eastwood* that where in the language of the mortgage document itself a security interest is taken in additional collateral such as personalty, the mortgagee's lien may be subject to strip down pursuant to section 506(a) of the Bankruptcy Code and may accordingly be bifurcated into secured and unsecured components under the debtor's chapter 13 plan. *Id.* at 99.

Applying the rationale of *Eastwood* and others to the case *sub judice*, the Debtors attempt to show that not only does the second mortgage document itself attempt to reach personalty and bank accounts as additional collateral, but that Columbia Savings does, in fact, have such an account, by virtue of the tax escrow account, in its possession and control. The Debtors rely on Third Circuit decisions which find that the reach for additional collateral other than the Debtors' primary residence, results in the allowance of bifurcation of the lien into secured

and unsecured elements under the second mortgage. *In re Johns*, 37 F.3d 1021, 1023 (3d Cir.1994) (bifurcating claim when an additional security interest was taken in appliances, machinery, furniture, and equipment on the premises, whether fixtures or not); and *In re Hammond*, 27 F.3d 52 (3d Cir. 1994) (bifurcating lien due to "additional security interest" in any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever existing or thereafter installed upon the premises.)[2]

### *Effect of the Tax Escrow Account*

■ With respect to the issue of the effect of the tax escrow account, the court notes that under the first mortgage, the Debtors were required to make monthly advance tax payments to Columbia Savings. Failure to do so would put the Debtors in default. The mortgage did not require that the money be placed in a separate escrow account. This was a decision made by Columbia Savings. The Debtors could not have received a refund on their money as if it were a deposit in a more traditional bank account; the Debtors could only receive a refund under a circumstance where excess funds were placed in the escrow account.

The Supreme Court has ruled that property interests "are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Under the above set of facts, the court finds that the Debtors would no longer have a property interest in the money of the tax escrow account pursuant to New Jersey state law. *See American National Bank & Trust v. Leonard*, 166 N.J.Super. 216, 399 A.2d 663 (App.Div.1979); *Kronisch v. The Howard Savings Institution*, 161 N.J.Super. 592, 392 A.2d 178 (App.Div.1978). State courts to have reviewed the issue have found that the payments are made for the benefit of the mortgagee and "the mortgagors do not retain any beneficial interest in the money deposited." *American National Bank & Trust*, 166

---

**2.** Parenthetically, the Court notes that the relevant time to examine whether an interest is subject to protection under Section 1322(b)(2) of the Bankruptcy Code is the date on which the petition is filed. *In re French*, 174 B.R. 1, 7 (Bankr. D.Mass.1994); *In re Wetherbee*, 164 B.R. 212, 215 (Bankr.D.N.H.1994); *In re Boisvert*, 156 B.R. 357, 359 (Bankr.D.Mass.1993).

N.J.Super. at 219, 399 A.2d 663. If the debtors don't hold a property interest in the money placed in the escrow account, then Columbia Savings cannot be said to be holding a security interest in the Debtors' property. Moreover, the court finds that even were such an interest held, the Debtors had a negative balance in the escrow account at the time of their bankruptcy filing. No property existed in fact. Finally, the tax escrow account was held in relation to the first mortgage and was not specific collateral taken as security for the second mortgage. In conclusion, we hold that the mere use of a tax escrow account, in this case, is not sufficient to defeat Columbia Savings' right to the anti-modification provisions of Bankruptcy Code Section 1322(b)(2).[3]

### Effect of "Additional Security" Language in the Loan Documents

■ In cases where the anti-modification provision has been discussed, the issue most often considered is whether the creditor attempted to reach collateral beyond that of the primary residence. The issue less often considered is the one raised by Columbia Savings herein, namely, whether or not "additional collateral" existed in fact.

As applied to the facts herein, Columbia Savings wishes this Court to look past the language of the mortgage note and analyze whether, in fact, collateral was taken by the bank. The note in this case attempts to reach "all money, securities and other personal property on deposit or in [Columbia Savings'] possession or control." It is clear that unlike the loan documents before the

Court in *Eastwood*, this language is not simply "describing the fee simple absolute." *Eastwood*, 192 B.R. at 105. The note herein on its face takes additional security.

Columbia Savings' argument regarding the absence of "additional security" taken in fact, must fail. This court finds that courts look definitively to the language of the loan documents. The United States Supreme Court in *Nobelman* stated that the bank's "rights," which are protected by Section 1322(b)(2), are "reflected in the relevant mortgage instruments." *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110. The mortgagor and the mortgagee bargained for these rights. *Id.* See also, *In re Johns*, 37 F.3d 1021 (3d Cir.1994); *In re Hammond*, 27 F.3d 52 (3d Cir.1994);[4] and *In re Eastwood*, 192 B.R. 96 (Bankr. D.N.J.1996).

In the recent case of *In re Pinto*, 191 B.R. 610, 613 (Bankr.D.N.J.1996), Judge Stripp considered a similar argument to the one Columbia Savings makes in the case herein. In *Pinto*, the mortgagee bank held a lien upon the real estate similar to that in *Eastwood*, except that the lien also included "all replacements and additions" as covered under the security instrument. 191 B.R. at 612. The bank argued that it did not actually take a security interest in "additional collateral," despite its existence in the mortgage document. The bank further argued that the collateral must "have a distinctive nature and ascertainable value or be specifically described in the security instrument." *Id.* In rejecting this argument Judge Stripp stated:

---

3. In so holding, the court does not rule definitively that the use of an escrow account in every situation is not sufficient to defeat the bank's rights under 1322(b)(2). In this regard, the court is aware of the Third Circuit's holding in *Hammond* that it held in *Wilson* that, "... creditors who demand additional security interests in personalty or *escrow accounts* and the like pay a price. Their claims become subject to modification." *Hammond*, 27 F.3d at 57. (emphasis added).

4. In *Hammond*, the Third Circuit stated that section 1322(b)(2) reflects congressional policy meant to protect home mortgage lenders. Nevertheless, the *Hammond* court stated that, as was also recognized in *Wilson*, the language in section 1322(b)(2) is clear, it refers to "a claim

secured *only* by a security interest in real property that is the debtor's principal residence." 27 F.3d at 57 (emphasis in original). The *Hammond* court went on to explain the rationale for such a finding by indicating:

"we are unable to read the statutory text to include mortgages which are secured not only by a "principal residence" but also by "appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever." Id.

Buttressing its finding by citing *Collier on Bankruptcy*, the Third Circuit reiterated that the mortgagee's recourse, if they wish to avoid modification, is to forego the additional security. 27 F.3d at 52.

Citicorp's contention that it did not *actually* take an additional security interest in the property or that the property lacks value does not negate the result. The Third Circuit held in *Wilson* that the subjective intent of a mortgagee to actually obtain an interest in the additional collateral is irrelevant because the language of section 1322(b)(2) is unambiguous. 191 B.R. at 613 (citing *Wilson,* 895 F.2d at 129). (Emphasis added).

The *Pinto* court continued:

"The Third Circuit has determined that the language of section 1322(b)(2) plainly states that a mortgagee who has an additional security interest does not get the benefit of the antimodification provision. *Hammond,* 27 F.3d at 57; *Wilson,* 895 F.2d at 129. Thus, Citicorp's security interest in additional collateral removes it from the antimodification provision. Unless and until Congress or the Supreme Court directs otherwise, Citicorp must limit its security interest to a debtor's residence to be afforded the protection of the antimodification provision in section 1322(b)(2). 191 B.R. at 614.

This court concurs. Thus, the second mortgage shall be bifurcated into secured and unsecured components and be stripped down pursuant to Bankruptcy Code sections 506(a) and 1322(b)(2).

### The Effect of the Third Mortgage

■ With the loans by Columbia Savings secured by all the value in the Property, no value remains to secure the loan made to the Debtors by Urban National Bank. Urban National Bank has not responded to the Debtors' motion and thus has not asserted that any value in the Property remains. Where no value remains to secure a mortgage, the claim must be treated as completely unsecured. *See In re Castellanos,* 178 B.R. 393, 395 (Bankr.M.D.Pa.1994).

■ As discussed, section 1322(b)(2) of the Bankruptcy Code permits the modification of unsecured claims. Because the value of the Property under either appraisal submitted before this Court is less than the balance due on the first and second mortgages combined, no value remains to secure the third mort-

gage of Urban National Bank. It may therefore be treated as an unsecured claim, which is not subject to the anti-modification provisions of 1322(b)(2). *See In re Woodhouse,* 172 B.R. 1 (Bank.D.R.I.1994); *In re Sette,* 164 B.R. 453 (Bank.E.D.N.Y.1994); *In re Moncrief,* 163 B.R. 492 (Bank.E.D.Ky.1993); *In re Williams,* 161 B.R. 27 (Bank.E.D.Ky. 1993); *see also* 5 *Collier on Bankruptcy,* § 1322.06 (15th Ed.) (The rights of holders of unsecured claims may be modified by a chapter 13 plan pursuant to section 1322(b)(2)).

### *CONCLUSION*

We rule therefore, that based upon the law as has been established by this Circuit and for the reasons as aforestated, the debtors' motion to bifurcate and strip down the second mortgage lien currently held by Columbia Savings to the fair market value of the property pursuant to sections 506(a) and 1322(b)(2) of the Bankruptcy Code is hereby granted. Columbia Savings argument in favor of protection pursuant to section 1322(b)(2) of the Code is hereby denied. The fair market value of the debtors' property shall be determined at a valuation hearing at the time of confirmation. The motion to treat the third mortgage held by Urban National Bank as unsecured debt is granted.