In re: Manuel FERANDOS, Debtor

1ST 2ND Mortgage Co. of
NJ, Inc., Appellant

v.

Manuel Ferandos.

No. 03–4716.

United States Court of Appeals,
Third Circuit.

Argued Dec. 6, 2004.

March 18, 2005.

Robert B. Farrington [Argued], Law Office of Frank J. Martone, Bloomfield, NJ, for Appellant.

Thomas E. Shields [Argued], Wayne, NJ, for Appellee.

Before RENDELL and FISHER, Circuit Judges, and YOHN,* District Judge.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

■ In this appeal, we must decide under what circumstances a mortgagee may qualify for the anti-modification protection afforded by 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) of the Bankruptcy Code protects a mortgagee from having its mortgage modified in a chapter 13 bankruptcy proceeding. It applies only if the mortgagee's claim is secured "only by a security interest in real property that is the debtor's principal residence."

We have previously examined mortgages under this template and found them ineligible for protection under 11 U.S.C. § 1322(b)(2). The District Court, considering itself bound to do so by our precedent, held that the instant mortgage was modifiable because it fell outside of the protections of § 1322(b)(2). However, we conclude that the mortgage does qualify for the protection afforded by § 1322(b)(2) because it is secured by rents, which are part of the real property in New Jersey, and by an escrow fund for insurance and taxes, which funds are not the property of the debtor once put into escrow. We will, therefore, reverse and remand.

■ The District Court had jurisdiction over the appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. § 1291. Our standard of review is plenary because the issues before us involve statutory interpretation and conclusions of law.

*Honorable William H. Yohn, Jr., Senior District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

*In re Johns,* 37 F.3d 1021, 1023 (3d Cir. 1994).

## I. Factual and Procedural Background

Manuel Fernandos filed for relief under chapter 13 of the Bankruptcy Code in 2002, listing as one of his assets his principal residence located at 1212 Jasam Court, Toms River, New Jersey. Two mortgages encumbered the property: the first held by Litton Loan Servicing Inc., and a second mortgage held by Appellant in the principal amount of $47,000. Appellant filed a proof of claim for $71,694.45. Ferandos filed a motion to "cram down" the second mortgage, contending that the value of the property was no more than the amount of the first mortgage, and that since the mortgage contained an assignment of rents clause, it failed to qualify for protection of section 1322(b)(2) and could therefore be "crammed down." The Bankruptcy Court determined that the value of the property exceeded the first mortgage by only $11,000 and entered an order in favor of the debtor, cramming Appellant's secured claim down to $11,000, based on the Bankruptcy Court's view that the assignment of rents clause constituted additional collateral that would take it out of the ambit of 11 U.S.C. § 1322(b)(2). In other words, since the claim was not secured "only" by the residential real property, but also by *rents,* § 1322(b)(2) did not provide Appellant the protection from modification that it needed in order to avoid a cramdown.

The District Court considered not only whether the "assignment of rents" clause constituted additional collateral but also whether the escrow provision of the mortgage rendered it ineligible for section 1322(b)(2) protection.[1] The District Court

1. The District Court noted that this additional issue was raised on appeal, not in the Bankruptcy Court, then addressed the merits without objection by the parties. We will also

held that our Court's precedent compelled the conclusion that the assignment of rents and the escrow provision gave additional collateral to the mortgage, thus removing it from section 1322(b)(2) protection, and accordingly affirmed the Bankruptcy Court's order.

## II. Discussion

■■■ We now turn to the precedent on which the District Court relied. By way of background, it is clear that the normal treatment of a purportedly secured claim in bankruptcy depends on the value of the collateral, and the claim will be considered to be a secured claim for the amount of the value and as an unsecured claim for the remainder. *See In re Johns*, 37 F.3d at 1023–24; *In re Hammond*, 27 F.3d 52, 55–56 (3d Cir.1994). Thus, a claim that is not fully collateralized can be modified, and the creditor said to be "crammed down" to the value of the collateral. 11 U.S.C. § 506(a).

However, this treatment is proscribed for those secured claims that qualify for "antimodification" protection under section 1322(b)(2), whereby a debtor may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). The issue, therefore, is whether the claim is secured "only" by the real property, or whether additional collateral has been taken by the mortgagee to secure the amount due under the mortgage.

The legislative history of § 1322(b)(2) "indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life." *In re Davis*, 989 F.2d 208, 210 (6th Cir.1993) (citations omitted). The statute does that by affording antimodification protection to home mortgage lenders in order to "to encourage the flow of capital into the home lending market." *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (Stevens, J., concurring). As the court noted in *In re Williams*, 109 B.R. 36, 42 (Bankr.E.D.N.Y.1989), although there is little legislative history available for § 1322(b)(2), "what does exist appears to indicate that by placing particular language into Section 1322(b)(2) . . . Congress intended to protect only the long-term residential home market financing industry . . . This court concurs with the cases that hold that the true congressional intent behind the Section 1322(b)(2) exception for claims secured only by an interest in the debtor's principal residence is to protect the traditional mortgage lender who provides long-term financing that enables individuals to purchase their home . . ."

On the several occasions that we have had the opportunity to apply § 1322(b)(2), we have focused on the plain language of the section and have found that the grant of additional collateral sealed the mortgagee's fate. In *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 124 (3d Cir.1990), the mortgage agreement included not only real estate, but also "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter in-

---

address this issue here, lest on remand it remain unresolved. Additionally, we cannot engage in a full and complete determination

regarding the application of § 1322(b)(2) to the mortgage at issue without considering the effect of the escrow provision.

stalled in or upon the premises." We rejected the argument that the items listed had no "independent value," and had little difficulty determining that their inclusion rendered the mortgage subject to modification. *Wilson*, 895 F.2d at 129.

In *Sapos v. Provident Institution of Savings*, 967 F.2d 918, 922 (3d Cir.1992), the mortgagee acknowledged that:

> The collateral which is the subject of the Mortgage includes the Residence together with ". . . the following described household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely, wall to wall carpeting . . ."

In addition, the mortgage was secured by rents, profits, and appliances. *Id.* We stated there that taking personalty, not just realty, as collateral, was fatal. *Id.* at 925.[2] We further warned that if the lender does not want its claim to fall outside of the protection of § 1322(b)(2), it should not seek to "get every last piece of collateral." *Id.* at 925.

Additionally, in *In re Hammond*, 27 F.3d 52, 57 (3d Cir.1994), we found that the taking of appliances, machinery, furniture, and equipment removed the mortgage from § 1322(b)(2) protection. There we considered not only our previous opinion in *Wilson*, but also the effect of the Supreme Court's intervening ruling in *Nobelman*, which involved a mortgage that granted a security interest in the common areas of a condominium complex, escrow funds, proceeds of hazard insurance, and rents.

In *Hammond*, 27 F.3d at 57, we characterized our reasoning with respect to *Wilson*:

> We held in *Wilson* that section 1322(b)(2)'s language plainly states that a mortgagee who has an additional security interest gets no protection from the antimodification clause of section 1322(b)(2). *Id.* ("The language of section 1322(b)(2) is unambiguous. The language of the bankruptcy judge bears repeating: 'If Commonwealth wishes otherwise, it should delete such language from its agreements.' "). We also relied on *Collier on Bankruptcy* to buttress our holding that creditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid modification, is to forego the additional security. *Id.* (citing 5 *Collier on Bankruptcy* P 1322.06 at 1322–14–15).

Regarding *Nobelman*, we concluded that although the Supreme Court's ultimate ruling was that the mortgage at issue could not be modified, the Court there concerned itself not with the nature of the

---

**2.** In our opinion in *Sapos* we did not focus specifically on rents, nor was the issue of whether rents are personalty or realty ever discussed. We view our conclusory treatment of rents as personalty there to not be controlling here. The parties have raised this issue, and, as discussed below, the Supreme Court has imposed an overarching obligation on federal courts to consult state law in determining the nature and scope of property interests in a bankruptcy estate, and to ensure that a creditor "is afforded in federal bankruptcy court the same protection [it] would have under state law if no bankruptcy had ensued." *Butner v. United States*, 440 U.S. 48, 55–56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In the instant case, therefore, we must look to New Jersey law, which, as explained below, classifies rents as real property. Because, under *Butner*, we cannot "upend" the law of New Jersey on this point, *see In re Jason Realty*, 59 F.3d 423, 427 (3d Cir.1995), *Sapos* does not bind us on the proper characterization of the assignment of rents here.

lien on the items of the collateral, but, rather, with a different issue, namely whether section 1322(b)(2) permits a debtor to modify the unsecured portion of the claim as determined under section 506(a). *See Hammond,* 27 F.3d at 56–57. In *Nobelman,* 508 U.S. 324 at 332, 113 S.Ct. 2106, 124 L.Ed.2d 228, the Supreme Court rejected the debtor's argument and concluded, without discussing the nature of the collateral:

> [T]o give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter section 1322(b)(2) plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

We concluded in *Hammond,* 27 F.3d at 57, that this language "does not overrule our holding in *Wilson* or *Sapos* that a mortgagee who wishes to avoid bifurcation of its claim on a residential mortgage must limit its lien to the real estate."

Our most recent pronouncement regarding § 1322(b)(2) was in the 1994 case of *In re Johns,* 37 F.3d at 1024, where we found the mortgage given by the debtors that contained the grant of a lien on appliances, machinery, furniture, and equipment to be essentially indistinguishable from the security interest given in *Hammond.* Therefore, in *Johns,* as in *Hammond,* we found that the anti-modification protection of § 1322(b)(2) did not apply.

The mortgage before us for consideration on this appeal does not include appliances, machinery, or equipment as collateral. The collateral description reads as follows:

> To secure to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of

all other sums with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained. Borrower does hereby mortgage, grant and convey to Lender the following described property located in the Dover Township, New Jersey ... Together with all the improvements now or hereafter erected on the property; and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage ...

It also contains a separate provision entitled "Assignment of Rents; Appointment of Receiver" that grants an assignment of rents "as additional security" and a covenant that establishes a fund for insurance and taxes which states that "The Funds are pledged as additional security for the sums secured by this Mortgage."

█ We have never been faced with a mortgage claimed to grant additional collateral where the property purporting to constitute something other than real property was the property at issue here, namely, only rents and the insurance and tax escrow. Appellant urges that our case law is not necessarily controlling when the grant is only of items of this nature. The unique attributes of these specific types of property lead us to conclude that our precedent to date is controlling only in one sense: that is, if the mortgagee's claim is, as a matter of fact and law, secured by assets other than the real property at issue, and a lien or security interest in personal property has, in fact and law, been granted, then the antimodification provisions of section 1322(b)(2) do not apply.

But that, we believe, is just the beginning of the analysis of the issue as presented in this case. The real inquiry is wheth-

er the assignment of rents was a grant of a lien on real property, and whether a security interest in the escrow at issue ever existed as a matter of law. We note that the language quoted above from our opinion in *Hammond* seems at first blush to suggest a ruling that escrow accounts are to be treated like personalty; however, we consider this to be *dicta*, since the effect of the escrow provision was not the issue before our Court in that case. Further, as will become clear from the discussion which follows, the factual and legal setting presented here dictates a different conclusion in any event.

Since our most recent opinion in 1994, numerous courts in our circuit and elsewhere have considered the precise issue before us, and we find several of their opinions helpful guides in our analysis of both of the types of collateral presented. We note at the outset that our Court's reasoning to date has followed what we might describe as a plain meaning approach to our application of this section of the Bankruptcy Code. That is, in each of the four opinions we have rendered, we have read section 1322(b)(2) to mean what its language literally states: that claim will be subject to modification unless *only* the real property stands as security.

Several courts in our circuit and elsewhere, however, have crafted tests that would permit us to draw a line based on the nature of the additional collateral, or look to the intent of Congress, and reject readings of section 1322(b)(2) that seem to eviscerate or undo what the courts believe was intended. *See, e.g., In re Rodriguez*, 218 B.R. 764, 775 (Bankr.E.D.Pa.1998) (urging courts to consider the Congres-

sional intent behind the implementation of the anti-modification provision when outlining its contours); *In re French*, 174 B.R. 1, 7 (Bankr.D.Mass.1994) (crafting the "independent value" test which states that " 'additional collateral'... [that] is nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value" does not result in the forfeiture by the lender of the anti-modification protections of § 1322(b)(2) [3]); *In re Davis*, 989 F.2d 208, 211 (6th Cir.1993) (holding that benefits which are merely incidental to an interest in real property do not remove a mortgage from the anti-modification protection of § 1322(b)(2)); *In re Rosen*, 208 B.R. 345, 350 (D.N.J.1997) (holding that because rents and profits would not exist but for the real property, they are not additional collateral).

■ These tests and rationales have been adopted by courts to limit the types of security the taking of which can eliminate protection for mortgagees. They have done so because to do otherwise is to deny mortgagees the very protection that was to be afforded by § 1322(b)(2). For, § 1322(b)(2) was enacted in order "to increase the accessibility of home mortgage funds to homeowners by assuring lenders that their expectations would not be frustrated." *In re Rosen*, 208 B.R. at 354 (citing *Nobelman*, 508 U.S. at 332, 113 S.Ct. 2106).

■ By drawing a line between the "normal" scope of the mortgagee's bargained-for security and protection—

---

**3.** In *Wilson*, 895 F.2d at 128–29, we rejected the argument that items of personalty would not constitute additional security because they lacked independent value. We did so on the basis that the items in question clearly *had* independent value, but we did not comment

further on whether lack of "independent value" could serve as an appropriate "test." And, we did not look to this factor as a "test" in any of the three opinions we penned thereafter.

thought to encompass aspects normally associated with the real estate—and those that add the value of personalty separate and apart from real estate-related collateral, the law is allowed to function as the courts believe Congress intended. As salutary and correct as the perception of Congress's intent probably is, however, Congress has written the provision in a way that leaves little room for disagreement as to its meaning. Unless and until we reconsider en banc our previous rulings, we believe we are constrained to conclude that if the language granting additional personal property collateral is included in the mortgage, and is effective to grant an interest in such collateral, the mortgagee is at its peril in not deleting it. See In re Hammond, 27 F.3d at 57 (acknowledging the congressional intent behind § 1322(b)(2), but emphasizing the need to focus on its plain language, which mandates the protection of mortgages secured only by an interest in real property that is the debtor's principal residence).[4] Thus, the language and its effect is key, and if other property is actually pledged, neither a court's perception of its precise nature, nor congressional policy, will alter the analysis or outcome. This language directs us to ask only one question: Does the mortgagee have a security interest in property other than real property?

█ In order to respond to that question, we must define "real property," and do so by reference to state law, here, the law of New Jersey. See Butner v. United States, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); In re Jason Realty, 59 F.3d 423, 427 (3d Cir.1995).[5]

█ Under New Jersey law, real property is defined to include "rents." See N.J. STAT. ANN. § 46:3–16 (2004); In re Mendez, 255 B.R. 143, 146 (Bankr.D.N.J. 2000); In re Eastwood, 192 B.R. 96, 106 (Bankr.D.N.J.1996); In re Cervelli, 213 B.R. 900, 903 (Bankr.D.N.J.1997). Accordingly, the grant of an interest in rents does not render the claim secured by anything other than the real property. Therefore, the protections of § 1322(b)(2) still apply to a mortgage in New Jersey where the debt is also secured by rents.

█ Additionally, the grant of a security interest in the escrow funds did not convey additional collateral under the law of the state of New Jersey. The covenant setting up the escrow requires the debtor to:

> [P]ay to Lender on the day monthly payments of principal and interest are payable under this Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes

4. Although Appellant argues that here there were no rents and no escrow at the time of the section 1322(b)(2) proceeding, so the claim as such was not actually "secured by" additional collateral, we read our case law as focusing on the effect of the grant in the instrument, not the actual existence of collateral available later to the creditor. See Wilson, 895 F.2d at 129. This issue does not appear to have been specifically raised in the Bankruptcy Court or the District Court, and we have no reason to change what we said in Wilson and will not stray from our view regarding the importance of precedent.

5. The debtor makes a halfhearted attempt to convince us that state law does not apply because for federal tax purposes rents are taxed as personal income, and there is case law acknowledging that the parties can define "rents" as they see fit. See Fargo Realty, Inc. v. Harris, 173 N.J.Super. 262, 414 A.2d 256 (App.Div.1980). One court has concluded, in In re French, 174 B.R. 1, 7 (Bankr.D.Mass. 1994), that we should look to federal law, believing that the need to interpret the federal bankruptcy laws requires resort to federal principles. But we find the Supreme Court's statement in Butner to the contrary, and our view as we have stated it in In re Jason Realty, to be more persuasive.

and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

 It is hornbook law that the debtor can only grant a security interest in whatever rights he has in the collateral. "[Article 9 of the UCC] does not specify the quantum of 'rights' which a debtor must have in collateral to support a security interest: evidently less than full 'legal title' will do and the secured party will get whatever rights the debtor had ..." 1 G. Gilmore, *Security Interests in Personal Property* § 11.5, at 353 (1965) (also cited in *In re Atchison*, 832 F.2d 1236, 1239 (11th Cir.1987)). Under New Jersey law the mortgagor retains no interest in such funds once escrowed. *See In re Libby*, 200 B.R. 562 at 566; *Am. Nat'l Bank & Trust v. Leonard*, 166 N.J.Super. 216, 218–19, 399 A.2d 663 (App.Div.1979). "Such payments [are] intended to benefit the mortgagee, not the mortgagors, and the mortgagors do not retain any beneficial interest in the money deposited. A mortgagor ceases to have any control over or interest in advance tax payments once the funds are delivered to a mortgagee." *Id.* at 219, 399 A.2d 663. Accordingly, we conclude that any grant of a security interest was meaningless and conveyed essentially no interest at all.

New Jersey's view of escrow funds, and our conclusion that they are not collateral, makes sense. Escrow funds are simply not akin to property whose value is applied by mortgagees in the event of default to pay down the outstanding debt. Rather, funds for taxes and insurance, paid over and placed in escrow, exist precisely for the purpose of paying said taxes and insurance—a cost incurred by the debtor in connection with the ownership of the real property. The debtor simply pays these costs in advance and retains no interest in the funds once placed in escrow. Given the common sense view of the funds endorsed by the New Jersey courts and our deference to state law when it comes to defining property interests, we view these escrowed funds as not constituting additional collateral. Therefore, since the only additional security claimed to take the mortgage outside the protection of section 1322(b)(2) was the rents and escrow, and since the rents are "real property," and since the escrow does not constitute additional collateral as a matter of law, the mortgage qualifies under section 1322(b)(2).

### III. Conclusion

For the reasons stated above, the order of the District Court affirming the order of the Bankruptcy Court will be reversed and the case will be remanded for further proceedings consistent with this opinion.