**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2430
_____

In re:  MAIN STREET BUSINESS FUNDING, LLC,

Debtor


JOHN P.  LANE, JR.,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1-22-cv-00791)
District Judge: Honorable Gregory B. Williams

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on June 24, 2024

Before:  JORDAN, McKEE, and AMBRO, <u>Circuit Judges</u>

(Opinion Filed: September 5, 2024)


OPINION[*]
_____

───────────────

    [*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

**AMBRO**, <u>Circuit Judge</u>

Appellant John Lane extended secured credit to Main Street Business Funding, LLC (the "Company"). The security agreement was very broad; indeed, it purported to secure all of the company's "tangible and intangible personal property . . . ., whether now owned or hereafter acquired . . . ., together with all proceeds thereof . . . ." But did the Company gave Lane a security interest in a lawsuit to secure his investment? The Bankruptcy Court concluded it did not, *In re Main St. Bus. Funding, LLC ("Main St. 1"),* 642 B.R. 141 (Bankr. D. Del. 2022), and the District Court reached the same result, *In re Main St. Bus. Funding, LLC ("Main St. 2")*, No. 1-22-cv-00791, 2023 WL 4420519 (D. Del. July 10, 2023). We agree with those well-crafted opinions and affirm.

## Background

In February 2016, Lane purchased a promissory note of the Company.[1] Lane and the Company simultaneously entered into a security agreement (governed by Pennsylvania law) that, as noted, granted Lane a security interest in the Company's assets then existing and thereafter acquired to secure the note.[2]

Later in 2016 the Company filed suit against (among others) a former consultant. The complaint alleged that in 2015 the consultant borrowed $700,000 under the Company's name without authorization and promptly embezzled $620,000 of the proceeds. (We refer to this suit as the "Embezzlement Litigation").

---

[1] The amount has been variously described as $852,500 or $825,000.

[2] Though not relevant for this opinion, Lane did not perfect this security interest until June 2018.

Three of the Company's creditors—Lane among them—filed a petition resulting in the Company's involuntary Chapter 7 bankruptcy case in 2019. In 2021, the Bankruptcy Court approved settlements of the Embezzlement Litigation as to some of the defendants. Lane then filed a motion requesting the settlement funds in the Company's bankruptcy estate be transferred to him because they were his collateral. The Bankruptcy Court denied his motion. It concluded the security agreement, as all encompassing as it purported to be, did not encumber the settlement monies. Lane appealed to the District Court, which reached the same conclusion. Lane appeals to us.

## Analysis

Our jurisdiction flows from 28 U.S.C. § 158(d)(1). We examine the Bankruptcy Court's legal conclusions without deference and factual findings for clear error. *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022).

Lane argues that the security agreement covered the Embezzlement Litigation as collateral. Pennsylvania's Article 9 of the Uniform Commercial Code, 13 Pa. Cons. Stat. §§ 9101-9709 (the "UCC"), governs the enforceability of security interests in personal property. To lien specific property, the debtor must have rights in that property and the security agreement must sufficiently describe it. UCC § 9203(b)(2), (b)(3)(i).

The Bankruptcy Court decided that the security agreement did not encumber the Embezzlement Litigation because it did not describe the underlying claim at all. The Court applied Pennsylvania's "gist of the action" doctrine, which is used to determine whether a lawsuit is grounded in tort or contract, to the Embezzlement Litigation "as a whole" and concluded it "boil[ed] down to a . . . commercial tort claim" as defined in UCC §

3

9102(13).  *Main St. 1*, 642 B.R. at 152; *see generally Bruno v. Erie Ins. Co.,* 106 A.3d 48, 56-72 (Pa. 2014) (discussing doctrine).  The UCC requires such claims be described with sufficient particularity, UCC § 9108(e)(1),[3] and the security agreement failed to describe the Embezzlement Litigation at all (no doubt understandable because the Litigation did not exist at the signing of that agreement).  Hence it was not collateral for Lane's loans at the time the security agreement was entered.  *Main St. 1*, 642 B.R. at 152-54.  The District Court affirmed on that basis.  *Main St. 2*, 2023 WL 4420519 at *8-*16.

The blink query that logically follows is would the after-acquired provision in the security agreement work to cover commercial tort claims.  The answer is no, as per UCC § 9204(b)(2) "[a] security interest does not attach under . . . an after-acquired property clause to . . . a commercial tort claim."  To further the point, comment 4 to § 9204 states directly that "an after-acquired property clause in a security agreement does not reach future commercial tort claims . . . .  [T]he claim must be in existence when the security agreement is authenticated."  UCC § 9204 cmt. 4.  *Accord* § 9108 cmt. 5.  As noted, it was not.

Before us, Lane offers a novel "gist of the settlement" argument to suggest that the Embezzlement Litigation is not a commercial tort claim.  He admits this argument "finds

---

[3] Nothing in the security agreement mentioned commercial tort claims as a general type of collateral.  Even if it had, that would have been an "insufficient description." UCC § 9108(e)(1). The description hurdle is not high, however, as comment 5 to § 9108 notes that "a description such as 'all tort claims arising out of the explosion of debtor's factory' would suffice, even if the exact amount of the claim, the theory on which it may be based, and the identity of the tortfeasor(s) are not described.  (Indeed, those facts may not be known at the time.)" UCC § 9108 cmt. 5.

no affirmation in existing case law[.]" Lane Br. 17. Lane's theory is bottomed on the idea the "gist of the action" doctrine examines suits on a claim-by-claim basis rather than reviewing them in the aggregate, and so settlements should also be examined on a claim-by-claim basis. Because Lane does not explain this argument, it is forfeited. *See Sikirica v. Wettach (In re Wettach)*, 811 F.3d 99, 115 (3d Cir. 2016); *cf. Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir. 1993*).*

Lane offers a fallback argument. Even if his security agreement does not directly cover the Embezzlement Litigation, it is the proceeds of his collateral—the stolen funds— and is accordingly encumbered in his favor. *See* UCC §§ 9203, 9315(a)(2).

But the security agreement did not encumber the embezzled money. As noted, a debtor can only offer property to secure a debt if it "has rights in the [proposed] collateral[.]" UCC § 9203(b)(2); *1st 2nd Mortg. Co. of NJ, Inc. v. Fernandos (In re Fernandos)*, 402 F.3d 147, 156 (3d Cir. 2005). And the District Court concluded the Company did not have rights in the cash, which was stolen prior to entering the security agreement. *Main St. 2*, 2023 WL 4420519 at *15.

Before us, Lane does not offer any authority suggesting that the Company had rights in stolen cash sufficient to pledge it as collateral after it was embezzled. He relies solely on *Bayer Cropscience, LLC v. Stearns Bank National Ass'n*, 837 F.3d 911 (8th Cir. 2016). But we agree with the Bankruptcy and District Courts: it is not applicable. *Main St. 1*, 642 B.R. at 154 n.70; *Main St. 2*, 2023 WL 4420519 at *16. *Bayer* stands for the proposition that a security interest in collateral also encumbers commercial tort claims that are its proceeds. *Id.* at 916-17. Unlike in *Bayer*, the Embezzlement Litigation emanates from

5

funds that the District Court ruled were not subject to Lane's security interest. Put another way, that Litigation cannot qualify as proceeds of a non-existing security interest.

* * * *

We have considered Lane's other arguments and are unpersuaded. Accordingly, we affirm the District Court's order affirming the Bankruptcy Court's decision to deny Lane's motion seeking payment of the settlement funds.